BARBARA H. HINSON v. WILLIAM W. JEFFERSON AND WIFE, ANNE C. JEFFERSON, AND MAE W. JEFFERSON

No. 75

(Filed 6 June 1975)

1. **Appeal and Error § 26— exception to judgment — review**

   An exception to a judgment rendered by the trial court, without an exception to the evidence or to the court's findings of fact, presents

Hinson v. Jefferson

for appellate review the sole question of whether the facts found support the judgment.

2. **Rules of Civil Procedure § 52— nonjury trial — separate statement of conclusions of law — bare legal conclusion**

   Statement in the judgment that "plaintiff is not entitled to the relief prayed for by her" without a statement of the grounds for such conclusion does not comply with the requirement of G.S. 1A-1, Rule 52(a)(1) that the court state separately its conclusions of law.

3. **Cancellation and Rescission of Instruments § 4— lot sold for residential purposes — inability to support on-site sewage disposal system — mutual mistake**

   A sale of realty was not subject to rescission on the ground of mutual mistake of fact where the grantors conveyed land subject to a restrictive covenant limiting its use to a single-family dwelling, the land could not be used for such purpose because it would not support a septic tank or on-site sewage disposal system, and such fact was unknown to the grantors and grantee at the time of the conveyance.

4. **Sales § 6; Vendor and Purchaser § 6— sale of land — restrictive covenant as to use — land not subject to such use — implied warranty**

   Where a grantor conveys land subject to restrictive covenants that limit its use to the construction of a single-family dwelling and, due to subsequent disclosures, both unknown to and not reasonably discoverable by the grantee before or at the time of conveyance, the property cannot be used by the grantee or by any subsequent grantees through mesne conveyances for the specific purpose to which its use is limited by the restrictive covenants, the grantor breaches an implied warranty arising out of said restrictive covenants.

5. **Sales § 6; Vendor and Purchaser § 6— sale of land — single-family dwelling restrictive covenant — inability to support on-site sewage disposal — breach of implied warranty**

   Where grantors conveyed land subject to a restrictive covenant limiting its use to a single-family dwelling, the land could not be used for such purpose because it would not support a septic tank or on-site sewage disposal system, and reasonable inspection by the grantee before or at the time of conveyance would not have disclosed that the property could not support a septic tank or on-site sewage disposal system, the grantors breached an implied warranty arising out of the restrictive covenant and the grantee, by giving timely notice of the defect once it was discovered, is entitled to full restitution of the purchase price upon her execution and delivery of a deed reconveying the land to the original grantors.

   Chief Justice SHARP and Justices LAKE and MOORE concur in the result.

APPEAL as of right by defendants pursuant to G.S. 7A-30(2) to review decision of Court of Appeals reported in 24 N.C. App. 231, 210 S.E. 2d 498 (1974) (opinion by Britt, J., Vaughn, J.,

concurring, Campbell, J., dissenting), which vacated the judgment entered by *Phillips, D.J.,* at the 11 July 1974 Session of PITT County District Court and remanded the cause for entry of judgment consistent with its opinion. This action was previously before the Court of Appeals on an appeal by plaintiff. *See* 20 N.C. App. 204, 200 S.E. 2d 812 (1973). On remand from this first appeal the cause was submitted to District Judge Phillips on the following stipulations contained in a pretrial order filed with the court on 3 April 1974:

"(a) This is an action by the plaintiff against the defendants for the recovery of the purchase price of $3,500 paid by the plaintiff to the defendants for a parcel or lot of land described in the complaint and for the cancellation of that certain deed whereby the defendants conveyed said lot or parcel of land to the plaintiff. The unverified answer of the defendants was duly filed.

(b) That by deed dated October 19, 1971, the defendants conveyed to the plaintiff a certain lot or parcel of land lying in Farmville Township, Pitt County, North Carolina, as particularly described in Deed Book J-40, page 365, of the Pitt County Public Registry and as described in the complaint of the plaintiff, said parcel of land fronting 200 feet on State Road #1200 by 300 feet deep.

(c) That the conveyance by the defendants to the plaintiff contained the following restrictive covenants which run with the lot or parcel of land conveyed as follows:

1. The above described lot or parcel of land shall be used for residential purposes only and no residence constructed thereon shall cost less than $25,000.00 based on cost prevailing in the County of Pitt, State of North Carolina, as of October 1, 1971; further, no residence shall be built upon the above described lot or parcel of land unless and until the plans and specifications therefor are approved in writing by William W. Jefferson and wife, Anne C. Jefferson, or the survivor, provided, however, that said plans and specifications need be approved only for the first residence built upon the above described lot or parcel of land.

2. No trailer, mobile home, basement, tent, shack, garage, barn or other outbuilding erected on the above described lot or parcel of land shall at any time be used as a residence, either temporarily or permanently.

3. No building shall be located on the above described lot or parcel of land nearer than 50 feet to the front lot line nor nearer than 20 feet from any side lot line.

4. No noxious or offensive trade or activity shall be carried on upon the above described lot or parcel of land nor shall anything be done thereon which may be or become an annoyance or nuisance. No signs or billbord shall be erected or maintained on the premises. No trade materials or inventories may be stored upon the premises and no trucks or tractors may be stored thereon. Further, said lot or parcel of land shall at all times be neat and clean in appearance and not allowed to be and become unsightly.

5. The lot or parcel of land hereinabove described shall not be subdivided into smaller building lots or parcels of land.

(d) That prior to and at the time of the conveyance by the defendants to the plaintiff of the subject parcel or lot of land, the defendants and the plaintiff contemplated that the plaintiff would construct a home or residence on said lot or parcel of land and that the plaintiff actually prepared to build a home or residence on said lot or parcel of land of the type the plaintiff discussed with the defendants prior to the conveyance of the subject lot and according to the plans approved by the defendants subsequent to the purchase of the subject lot.

(e) That the lot or parcel of land conveyed by the defendants to the plaintiff is located about one mile west of Joyner's Crossroads on State Road #1200, a rural community, to which a municipal sewage disposal system is not now available. That any sewage disposal system for a residence constructed on the subject lot would require the use of a septic tank or an on-site sewage disposal system.

(f) That when plaintiff was ready to commence construction of a proposed residence on the subject lot and before construction commenced, the Environmental Health Division of the Pitt County Health Department on December 27, 1972, pursuant to an examination of said lot performed by Mr. W. C. Haislip under the supervision of its Chief of Sanitation, Mr. W. M. Pate, in March 1972, certified that said lot would not support a septic tank or on-site sewage disposal system for that it was noted that the area has a drainage problem and is subject to flooding and would not support a septic tank or on-site sewage disposal system which would comply with the regulations govern-

ing sewage disposal systems in Pitt County, adopted by the Pitt County Board of Health on March 1, 1972, with the regulations adopted by the Pitt County Board of Health on the 1st day of February, 1953, as amended, the latter being in effect on October 19, 1971, and the ordinances of the County of Pitt. That on the 16th day of February, 1972, Charles R. Vandiford, an employee of the United States Department of Agriculture, Soil Conservation Service, Greenville, Pitt County, North Carolina, under the supervision of District Conservationist, Roy R. Beck, conducted an evaluation of the subject lot, the result of which disclosed that the subject lot is only 2.6 feet above the water level of Black Swamp, and subject to overflow, and has a very severe drainage problem which said condition can be corrected by extensive drainage procedures including as a necessary part thereof channel improvements to Black Swamp and Little Contentnea Creek at a prospective cost of several hundred thousand dollars. That these facts so determined and the conditions of the subject lot were true and the same on October 19, 1971, the date of the sale and transfer of the subject lot to the plaintiff by the defendants.

(g) That due to the determination of the Environmental Health Division of the Pitt County Health Department the subject lot would not support a septic tank or on-site sewage disposal system in its present condition, a permit to install a septic tank or on-site sewage disposal system was denied pursuant to the regulations governing sewage disposal in Pitt County adopted by the Pitt County Board of Health, March 1, 1972, the ordinances of Pitt County, and to the regulations of the Pitt County Board of Health, adopted February 1, 1953, as amended, if applied.

(h) That by reason of the denial by the Environmental Division of the Pitt County Health Department to the plaintiff of a permit to construct a septic tank or on-site sewage disposal system on said lot, the plaintiff did not construct a residence on said lot and since the correction of the condition inhibiting the construction of a septic tank and on-site sewage disposal system on the subject lot could not be achieved except through an expenditure of funds of several hundred thousand dollars, the plaintiff demanded the refund of the purchase price paid by the plaintiff to the defendants for said lot in exchange for a reconveyance by the plaintiff to the defendants of said lot.

Hinson v. Jefferson

(i) Defendants declined the plaintiff's offer and refused plaintiff's demand.

(j) That the purchase price of said lot paid by the plaintiff to the defendants was $3,500.00.

(k) That prior to and at the time of the conveyance of said lot by the defendants to the plaintiff, neither the defendants nor the plaintiff knew that said lot would not support a septic tank or on-site sewage disposal system and did not know such fact until the evaluation of said lot was made by the United States Soil Conservation Service of the Department of Agriculture and the Environmental Health Division of the Pitt County Health Department determined such to be true.

(l) That there was no allegation by the plaintiff in her complaint of fraud or misrepresentation on the part of the defendants and the plaintiff does not contend that the defendants were guilty of any fraud or misrepresentation with respect to the condition of the aforesaid lot prior to or at the time of the conveyance of said lot by the defendants to the plaintiff, but on the contrary the defendants in conveying said lot to the plaintiff were totally unaware of any drainage or other soil condition respecting said lot which would or might prohibit the use of a septic tank or other on-site sewage system thereon.

(m) That the Environmental Health Division of the Pitt County Health Department determined, "That this lot is not suitable for residential building purposes and does not meet County Health requirements."

(n) That the deed of conveyance contained no covenant of warranty that the lot or parcel of land conveyed was suitable for the on-site construction of a residence.

(o) That plaintiff through counsel abandons her claim for special damages of $453.00.

5. It is stipulated that this cause may be heard out of term by District Judge Herbert O. Phillips and that the date of the entry of judgment shall be that date on which the judgment is actually signed."

In its judgment, after adopting verbatim the preceding stipulation of facts as its findings of fact, the District Court stated:

"And based upon said stipulations entered into between the parties hereto, the Court is of the opinion and concludes as

a matter of law that plaintiff is not entitled to the relief prayed for by her, or any part thereof;

"IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED:

"*First:* That this action be dismissed and plaintiff have and recover nothing of the defendants, either individually or jointly.

"*Second:* That the costs of this action be taxed against the plaintiff."

*Gaylord and Singleton, by L. W. Gaylord, Jr., for defendant appellants.*

*Everett & Cheatham, by C. W. Everett, Sr., for plaintiff appellee.*

COPELAND, Justice.

[1] Plaintiff excepted to the signing and entry of the foregoing judgment and this constitutes her only assignment of error on appeal. An exception to a judgment rendered by the trial court, without an exception to the evidence or to the court's findings of fact, presents for appellate review the sole question of whether the facts found support the judgment. *See, e.g., St. George v. Hanson,* 239 N.C. 259, 78 S.E. 2d 885 (1954); *Best v. Garris,* 211 N.C. 305, 190 S.E. 221 (1937). *See also Parker v. Insurance Co.,* 259 N.C. 115, 130 S.E. 2d 36 (1963); *Putnam v. Triangle Publications, Inc.,* 245 N.C. 432, 96 S.E. 2d 445 (1957).

G.S. 1A-1, Rule 52(a)(1) provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and *state separately its conclusions of law thereon* and direct the entry of the appropriate judgment." (Emphasis supplied.) This rule has been interpreted by this Court to require the trial judge to do the following three things in writing: "(1) to find the facts on all issues of fact joined on the pleadings; (2) to declare the conclusions of law arising on the facts found; and (3) to enter judgment accordingly." *Coggins v. City of Asheville,* 278 N.C. 428, 434, 180 S.E. 2d 149, 153 (1971). This was also the rule under former G.S. 1-185. *See, e.g., Morehead v. Harris,* 255 N.C. 130, 120 S.E. 2d 425 (1961); *City of Goldsboro v. Atlantic Coast Line Ry. Co.,* 246 N.C. 101, 97 S.E. 2d 486 (1957).

**[2]** In the instant case the court found the facts to be as stipulated and thereafter directed entry of judgment in favor of defendants. However, the court failed to state separately its conclusions of law. The mere assertion that "plaintiff is not entitled to the relief prayed for by her," without stating the grounds for such a bare legal conclusion, does not comply with the requirements of Rule 52(a)(1). The purpose for requiring the conclusions of law to be stated separately is to enable appellate courts to determine what law the trial court applied in directing the entry of judgment in favor of one of the parties. *See, e.g., Morehead v. Harris, supra; Jamison v. City of Charlotte,* 239 N.C. 423, 79 S.E. 2d 797 (1954).

The problems engendered by non-compliance with Rule 52(a)(1) are readily apparent in the instant case. We do not know what law or legal theory the trial court applied to the facts in denying plaintiff the relief prayed for. We can only assume that the trial court found none of plaintiff's legal theories to be persuasive. Plaintiff states in her sole assignment of error that she relies on the following legal points in support of her exception to the judgment:

"1. That the stipulated facts show that there was a mutual mistake of an existing material fact, common to both parties, and by reason thereof each has done what neither intended, coupled with a failure of consideration.

"2. That in a conveyance of land by deed containing restrictions therein which restrict the use of the property for a certain purpose, the grantor thereby warrants that the property so conveyed and restricted can be used for the specific purpose to which its use is restricted by the deed of conveyance."

In general, we are bound by the findings of fact unless such facts are not supported by any competent evidence. *See, e.g., Blackwell v. Butts,* 278 N.C. 615, 180 S.E. 2d 835 (1971); *Knutton v. Cofield,* 273 N.C. 355, 160 S.E. 2d 29 (1968). Here the facts are conclusive since no exception was taken by either party to the court's findings. On the other hand, we are not precluded from reviewing the trial court's view of the applicable law arising on the facts. *See generally* 1 McIntosh N. C. Practice and Procedure §§ 1372-74 (1956) (Phillips' 1970 Supp.); 5A Moore's Federal Practice § 52.03(2) (1974); Wright & Miller, Federal Practice and Procedure: Civil § 2588 (1971). Hence, in the interest of justice, we deem it appropriate to pro-

ceed to determine the proper legal conclusions to be drawn from the trial court's findings.

Based on these uncontroverted facts, the Court of Appeals held that plaintiff was entitled to rescind the contract on the grounds of "mutual mistake of material fact" coupled with a "total failure of consideration." 24 N.C. App. at 238-39, 210 S.E. 2d at 502-03. Assuming, *arguendo,* that the Court of Appeals was correct, and that this is a true mistake case, then it is one that must necessarily involve a mistaken *assumption* of the parties in the formation of the contract of purchase. In these mistaken assumption cases, unlike other kinds of mistake cases, the parties communicate their desires to each other perfectly; they intend to complete a sale, or a contract of sale, and their objective acts are in accord with their intent. Difficulties subsequently arise because at least one of the parties has, either consciously or unconsciously, mistaken beliefs concerning facts that make the sale appear more attractive to him than it actually is. For many cases *see, e.g.,* J. Wade, Cases on Restitution (1966) ; J. Dawson & J. Palmer, Cases on Restitution (1958). *See generally* 3 A. Corbin, Contracts §§ 579-to-621 (2d ed. 1960) ; Restatement of Contracts § 502 (1962) ; Restatement of Restitution (1937) ; 6 S. Williston, Contracts (rev. ed. 1937) ; Annot., Vendor and Purchaser: Mutual Mistake as to Physical Condition of Realty as Ground for Rescission, 50 A.L.R. 3d 1188 (1973) ; Atiyah & Bennion, Mistake in the Construction of Contracts, 24 Modern L. Rev. 421 (1961) ; Foulke, Mistake in the Formation and Performance of a Contract, 11 Colum. L. Rev. 197 (1911).

In attempting to determine whether the aggrieved party is entitled to some kind of relief in these mistaken assumption cases, courts and commentators have suggested a number of factors as relevant. *E.g.,* was the mistake bilateral or unilateral; was it palpable or impalpable; was one of the parties unjustly enriched; was the other party unjustly impoverished; was the risk assumed by one of the parties (i.e., subjective ignorance) ; was the mistake fundamental or collateral; was the mistake related to present facts or to future expectations; etc. *See* Rabin, A Proposed Black-Letter Rule Concerning Mistaken Assumptions in Bargain Transactions, 45 Tex. L. Rev. 1273 (1967) (hereinafter cited as Rabin). *See also* D. Dobbs, Remedies 716-84 (West 1973).

Our research has failed to disclose a prior North Carolina case applying the doctrine of mutual mistake pertaining to a physical condition of real property as a ground for rescission. *But see MacKay v. McIntosh,* 270 N.C. 69, 153 S.E. 2d 800 (1967). However, we have found a few cases from other jurisdictions.

In *Blythe v. Coney,* 228 Ark. 824, 310 S.W. 2d 485 (1958), the court allowed rescission where the vendor and purchaser of a residence were mistaken as to the adequacy of water pressure. The court declared that a contract may be rescinded for a mutual mistake regarding a material fact and that the mistaken assumption of the parties could be characterized as such a mistake in view of the evidence that the water meter in the home was unconnected at the time it was shown to the purchasers so that neither party was aware of the water shortage until after the sale.

Likewise, in *Davey v. Brownson,* 3 Wash. App. 820, 478 P. 2d 258 (1970), *cert. denied,* 78 Wash. 2d 997 (1971), the court relied on the doctrine of mutual mistake of a material fact in rescinding the sale of, inter alia, a 26-unit motel that, unknown to either party at the time of signing the contract, was infested with termites, a condition that could only be corrected by substantial structural repair. The court, quoting from *Lindeberg v. Murray,* 117 Wash. 483, 495, 201 P. 759, 763 (1921), stated: "We think it is elementary that, where there is a clear *bona fide* mistake regarding material facts, without culpable negligence on the part of the person complaining, the contract may be avoided, and equity will decree a rescission. We take it that the true test in cases involving mutual mistake of fact is whether the contract would have been entered into had there been no mistake. . . ." *Id.* at 824, 478 P. 2d at 260.

One court has held that there were sufficient grounds for rescission of a sale of realty where both the vendor and the vendee were mistaken as to the suitability of the soil or the terrain for agricultural purposes. *See, e.g., Binkholder v. Carpenter,* 260 Iowa 1297, 152 N.W. 2d 593 (1967); *McDonald v. Benge,* 138 Iowa 591, 116 N.W. 602 (1908); *Smith v. Bricker,* 86 Iowa 285, 53 N.W. 250 (1892); *Hood v. Smith,* 79 Iowa 621, 44 N.W. 903 (1890). Suffice it to say, all four decisions appear to be contra to the traditional doctrine of *caveat emptor.*

The closest mistaken assumption case we have found to our fact situation is *A & M Land Development Co. v. Miller,* 354

Mich. 681, 94 N.W. 2d 197 (1959). In that case, the court held that the trial judge was correct in refusing to rescind the sale of 42 building lots slated for subdivision and development, because of mutual mistake regarding the poor absorptive qualities of the soil that resulted in a *tentative* refusal of septic tank permits to the subdivider. The court concluded that, assuming there was a mutual mistake, to grant rescission would be improper since the purchaser received the property for which he contracted, notwithstanding that it was less attractive and less valuable to him than he had anticipated.

There are, however, several important distinguishing factors between the *Miller* case and our case. First, the purchaser in *Miller* was a developer-speculator; in our case the purchaser is a consumer-widow. Second, the property in *Miller* was not rendered valueless for its intended use, but only rendered less valuable because it could not be developed as densely as originally anticipated; in our case the property was rendered totally valueless for the intended use.

[3] In our view, the difficulty with the above listed factors and with the decisions we have examined is that in any given case several factors are likely to be present, and each may point toward a different result. For example, in *A & M Land Development Co. v. Miller, supra,* the mistake appears to have been mutual and it also appears to have been induced by misrepresentations of the vendor (i.e., vendor furnished reports of privately engaged engineers and local public sanitation officials indicating that the character of the soil was suitable for the use of individual septic tank systems). Yet, the court held that rescission would be improper since the purchaser received the property for which he had contracted. Perhaps the court felt that since the vendee was a developer-speculator he assumed the risk of soil defects. In short, the relation of one factor to another is not clear. *Compare Vickerson v. Frey,* 100 Cal. App. 2d 621, 224 P. 2d 126 (1950) (mistake regarding effect of building code held no grounds for rescission) *with McKay v. McIntosh, supra* (mistake regarding zoning ordinance held grounds for rescission). *But see* Rabin, *supra.* In any event, because of the uncertainty surrounding the law of mistake we are extremely hesitant to apply this theory to a case involving the completed sale and transfer of real property. Its application to this type of factual situation might well create an unwarranted instability with respect to North Carolina real estate trans-

actions and lead to the filing of many non-meritorious actions. Hence, we expressly reject this theory as a basis for plaintiff's rescission.

Is plaintiff therefore without a remedy? Did plaintiff buy this property "at the end of the halter" (an expression of horse traders)? At this moment, plaintiff has naked legal title to a tract of real estate whose use to her is limited by the restrictive covenants and by the facts as stipulated to what she calls "the dubious pleasure of viewing the same." On the other hand, defendants have $3,500 of plaintiff's money. There can be no question but that the parties to this transaction never contemplated this particular use of the subject property. In fact, the deed, by its very terms, makes it clear that the intended use was for the construction of a single-family residence, strictly limited as to costs and as to design. The stipulation further indicates that both prior to and at the time of the conveyance neither defendants nor plaintiff knew that the property would not support a septic tank or on-site sewage disposal system.

In the face of these uncontroverted facts, defendants rely upon the doctrine of *caveat emptor* as a legal defense to plaintiff's action for rescission.

The common law doctrine of *caveat emptor* historically applied to sales of both real and personal property. Its application to personal property sales, however, has been restricted by the Uniform Commercial Code. *See* G.S. 25-2-314, et. seq. Over the years, as to real property, the number of cases that strictly apply the rule of *caveat emptor* appears to be diminishing, while there is a distinct tendency to depart therefrom, either by way of interpretation, or exception, or by simply refusing to adhere to the rule where it would work injustice. *See, e.g.,* 7 Williston, Contracts §§ 926 and 926A (3d ed. 1963); 77 Am. Jur. 2d Vendor and Purchaser §§ 329-37 (1975); 67 Am. Jur. 2d Sales § 462 (1973); Haskell, The Case for an Implied Warranty of Quality in Sales of Real Property, 53 Geo. L.J. 633 (1965) (hereinafter cited as *Haskell*); Seavey, Caveat Emptor as of 1960, 38 Texas L. Rev. 439 (1960). *See generally,* Annot., 50 A.L.R. 3d 1188, *supra;* Annot., Liability of Builder-Vendor or Other Vendor of New Dwelling for Loss, Injury, or Damage Occasioned by Defective Condition Thereof, 25 A.L.R. 3d 383 (1969).

In recent years the rule of *caveat emptor* has suffered severe inroads in sales of houses to be built or in the course of con-

struction. *See generally* Bearman, Caveat Emptor in Sales of Realty—Recent Assaults Upon the Rule, 14 Vand. L. Rev. 541 (1961); Bixby, Let the Seller Beware: Remedies for the Purchase of a Defective Home, 49 J. Urban Law 533 (1971); Haskell, *supra;* Jaeger, The Warranty of Habitability, 46 Chi-Kent L. Rev. 123 (1969) (Part I); 47 Chi-Kent L. Rev. I (1970) (Part II); Roberts, The Case of the Unwary Home Buyer: The Housing Merchant Did It, 52 Cornell L. Q. 835 (1967); Comment, Buyer's Remedies in the Sale of Real Property in California, 53 Calif. L. Rev. 1062 (1965); Note, Implied Warranties in the Sale of New Houses, 27 Md. L. Rev. 299 (1967). Today, it appears that a majority of the states imply some form of warranty in the purchase of a new home by a first purchaser from a builder-vendor. *See, e.g.,* Annot., 25 A.L.R. 3d 383, *supra,* for a collection of the cases. *See also* M. Friedman, Contracts and Conveyances of Real Property 30-35 (3d ed. 1975) (hereinafter cited as *Friedman).*

During the course of this litigation, and subsequent to the oral arguments of this case in the Court of Appeals, this Court decided the case of *Hartley v. Ballou,* 286 N.C. 51, 209 S.E. 2d 776 (1974). In that case, this Court, in an opinion by Chief Justice Bobbitt, approved the "relaxation of the rule of *caveat emptor*" in respect of defects of which the purchaser of a recently completed or partially completed dwelling was unaware and could not discover by a reasonable inspection, and substituted therefore, for the first time in this State, an implied warranty defined as follows:

"[I]n every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee." *Id.* at 62, 209 S.E. 2d at 783. At the same time, *Hartley* made it clear that such implied warranty falls short of "an absolute guarantee." "An implied warranty cannot

Hinson v. Jefferson

be held to extend to defects which are visible or should be visible to a reasonable man . . . . " *Id.* at 61, 209 S.E. 2d at 782. As to what constitutes a "reasonable inspection" under diverse factual situations, *see, e.g., Performance Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972); *Douglas v. W. C. Mallison & Son*, 265 N.C. 362, 144 S.E. 2d 138 (1965); *Insurance Co. v. Don Allen Chevrolet Co.*, 253 N.C. 243, 116 S.E. 2d 780 (1960); *Driver v. Snow*, 245 N.C. 223, 95 S.E. 2d 519 (1956). *Cf.* G.S. 25-2-316(3)(b).

We believe that many of the mutual mistake cases discussed supra were in fact embryo implied warranty cases. For example, in *Davey v. Brownson, supra,* the purchaser obtained rescission because of termites on the ground of mutual mistake. Although the court denied its decision was based on implied warranty, it is difficult to understand the application of the mutual mistake doctrine. *See also Blythe v. Coney, supra. See generally* Freidman, *supra,* at 30-37. In this context, *Hartley* could easily be classified as a mutual mistake case, i.e., both parties assumed that the basement wall was sufficiently free from structural defects so as to prevent any water leakage. But, in *Hartley* we recognized the implied warranty as a limited exception to the general rule of *caveat emptor;* if we had elected to totally abolish the doctrine, then perhaps application of the mutual mistake theory would have been appropriate. *Hartley* is not an abrogation of the doctrine of *caveat emptor;* on the contrary it is only a well-reasoned exception.

[4] Concededly, this is not the *Hartley* fact situation. *Hartley* involved a builder-vendor of new homes and a consumer-vendee. Nonetheless, we believe that *Hartley* provides the legal precedent for deciding this case. The basic and underlying principle of *Hartley* is a recognition that in some situations the rigid common law maxim of *caveat emptor* is inequitable. We believe this is one of those situations. As a result, we hold that where a grantor conveys land subject to restrictive covenants that limit its use to the construction of a single-family dwelling, and, due to subsequent disclosures, both unknown to and not reasonably discoverable by the grantee before or at the time of conveyance, the property cannot be used by the grantee, or by any subsequent grantees through mesne conveyances, for the specific purpose to which its use is limited by the restrictive covenants, the grantor breaches an implied warranty arising out of said restrictive covenants.

Defendant contends that if plaintiff is permitted to rescind, then any contract or conveyance can be set aside under a set of circumstances rendering the land no longer attractive to a purchaser. If we applied the mutual mistake doctrine, then there might be some merit to this argument. But, under the rule we have announced, a purchaser is bound by patent defects or by facts a reasonable investigation would normally disclose. In the instant case, it is clear that a reasonable inspection by the grantee either before or at the time of conveyance would not have disclosed that the property could not support a septic tank or on-site sewage disposal system.

[5]　Therefore, under the facts of this case, we hold that defendant grantors have breached the implied warranty, as set out above, and that plaintiff, by timely notice of the defect, once it was discovered, is entitled to full restitution of the purchase price; provided that she execute and deliver a deed reconveying the subject lot to defendants. The judgment of the Court of Appeals, as modified herein, is thus affirmed.

Modified and affirmed.

Chief Justice SHARP and Justices LAKE and MOORE concur in the result.