FRANK A. LUMSDEN AND WIFE, FRANCES B. LUMSDEN v. RICHARD M. LAWING AND WIFE, ANN B. LAWING

No. 915SC137

(Filed 6 October 1992)

1. **Appeal and Error § 340 (NCI4th)— broadside assignment of error—failure to comply with Rules of Appellate Procedure— merits not considered by court on appeal**

Defendants lost the right to challenge any variance between the complaint and the judgment where they did not state separate assignments of error confined to a single issue of law but instead made one broadside assignment of error which did not state the basis upon which error was assigned and did not identify which findings of fact were not supported by the evidence. Appellate Rules 10(c)(1) and 28(b)(5).

**Am Jur 2d, Appeal and Error §§ 648, 654, 658.**

2. **Sales § 6.4 (NCI3d)— house on lot unsuitable for septic system—exception to rule of caveat emptor—implied warranty of restrictive covenants.**

The trial court did not err in finding that plaintiffs purchased a house and lot from defendants without knowledge that the lot was unsuitable for a septic tank or on-site sewage system; five months later the ground adjacent to the septic tank began caving in and water and sand began bubbling out of the ground; plaintiffs then learned that the county health department initially determined the lot to be unsuitable for a septic tank; two experts then concluded that the lot was unsuitable for a septic tank; the deed of conveyance restricted use of the lot to single-family dwellings; and plaintiffs began experiencing problems with the septic tank system well within the implied warranty time period. Furthermore, the court properly concluded that the property was subject to an implied warranty that it would be suitable for use as a single-family residence as set forth in the restrictive covenants; the property could not be used for a single-family residence since the lot could not support a septic tank; defendants breached the implied warranty arising out of the restrictive covenants; and plaintiffs were entitled to rescission of the contract and restitution.

Am Jur 2d, Vendor and Purchaser §§ 335, 542.

Liability of vendor of existing structure for property damage sustained by purchaser after transfer. 18 ALR4th 1168.

3. Sales § 19 (NCI3d) — rescission of contract to purchase house — damages — mortgage interest and insurance premiums

In an action to rescind a contract for the purchase of a house based on defendants' breach of an implied warranty arising out of restrictive covenants where the trial court found for plaintiffs and rescinded the contract, plaintiffs were entitled not only to the full purchase price, interest, ad valorem taxes, and expenses advanced in repair of the septic tank, but also to sums expended on mortgage interest and insurance premiums, since defendant builders were on notice of the risk involved, had superior knowledge of whether the house was suitable for habitation, and were in a better position to evaluate and guard against the financial risk posed by a defective septic system, and it would be unjust to require plaintiffs to absorb the costs of the mortgage interest and insurance premiums and pay reasonable rental value for use of the house during their occupancy.

Am Jur 2d, Vendor and Purchaser §§ 493, 542.

4. Sales § 19 (NCI3d) — rescission of contract to purchase house — plaintiffs obligated to pay rental value — insufficient evidence to establish value

In an action for rescission of a contract to purchase a house where plaintiffs prevailed, plaintiffs were obligated to pay the reasonable rental value of the premises during their occupancy; however, the evidence was insufficient to support the trial court's finding of the reasonable rental value of $600, based on testimony of plaintiffs' "normal" use of the dwelling and the mortgage payment of $604.

Am Jur 2d, Vendor and Purchaser § 573.

APPEAL by defendants and cross appeal by plaintiffs from judgment entered 24 August 1990 as modified by order entered 31 October 1990 by *Judge Ernest B. Fullwood* in NEW HANOVER County Superior Court. Heard in the Court of Appeals in Wilmington on 16 October 1991.

LUMSDEN v. LAWING

[107 N.C. App. 493 (1992)]

*Shipman & Lea, by Gary K. Shipman, for plaintiff appellants-appellees.*

*Easley & Bain, P.A., by Roy C. Bain, for defendant appellants-appellees.*

COZORT, Judge.

Defendants constructed a house in Wilmington, North Carolina on a lot unsuitable for a septic tank system. Plaintiffs purchased the house from defendants in March 1987. In August 1987, plaintiffs began experiencing problems with the septic tank and contacted defendants for assistance. Defendants denied any responsibility for the system. On 14 April 1988, plaintiffs filed suit in New Hanover Superior Court alleging misrepresentation and breach of the implied warranty of workmanlike construction and praying for rescission of the contract, restitution, and money damages. On 24 August 1990, the trial court entered an order rescinding the contract and awarding plaintiffs the full purchase price, together with interest, ad valorem taxes, and expenses advanced in an attempt to repair the septic system, less the reasonable rental value of the premises. On 31 October 1990, the trial court modified the judgment and ordered plaintiffs to pay interest at the legal rate from March 1987 on the reasonable rental value of the property. Both parties appeal from the judgment, and plaintiffs appeal from the order. We affirm in part and remand for further proceedings as to the rental value of the premises.

In 1986, the developer of the Greenbriar Subdivision in New Hanover County applied for a septic tank permit from the New Hanover County Health Department (NHCHD). The NHCHD determined that the lot was unsuitable for installation of a residential septic system, denied the request for a permit, and suggested certain modifications to the property which might make the site "provisionally suitable." On 8 August 1986, defendant Ann B. Lawing applied for a septic system permit. The NHCHD again classified the lot as "unsuitable" and required drainage modification and the addition of fill material before any septic system could be installed. Defendants undertook the modifications and installed a septic system. In early January 1987, the NHCHD inspected the septic system and certified that the required modifications had been made and issued a certificate to the defendants. Defendants then constructed a single-family dwelling on the property.

In either January or February 1987 plaintiffs looked at the house and lot, but defendants made no mention of the modifications. A reasonable inspection of the lot would not have revealed that the lot was unsuitable for a septic system. Plaintiffs signed a contract to purchase on 10 February 1987, moved into the house on 21 March 1987, and closed on 1 April 1987. At closing, plaintiffs received a Deed of conveyance subject to restrictive covenants which limited the use of lots to single-family residences. At the time of closing, there was no evidence of septic system failure.

During the month of April 1987, plaintiffs noticed a hole in the sidewalk located near the area of the septic system installation. Plaintiffs repeatedly refilled the hole with rock and sand, but their efforts to permanently fill the hole failed. In August 1987 plaintiffs noticed the ground adjacent to the septic tank caving in and sand and water bubbling out of the ground. Plaintiffs contacted both the individual who installed the system and NHCHD. On 15 September 1987, representatives of NHCHD inspected the property and noted that the system had not been constructed in accordance with the plan filed with NHCHD. Plaintiffs then learned for the first time that NHCHD had initially determined the lot to be unsuitable for a septic system and had later changed the classification to provisionally suitable. After defendants disclaimed any responsibility for the tank, plaintiffs installed an additional septic tank line to remedy the problem. The additional line failed by December 1987. As a result of the failure of the septic system, raw sewage bubbled up in plaintiffs' front yard.

In February 1988 representatives of NHCHD inspected the property and determined that the soil conditions might prevent the septic system from operating properly. Plaintiffs' problems with the septic system continued throughout 1988, although plaintiffs did not make unusual use of the house or consume extraordinary amounts of water. In January 1989, Diane Harvell, the environmental health director of the NHCHD, inspected the property and determined that the soil conditions could make the property unsuitable for a septic tank system. At trial, Ms. Harvell testified that the lot currently was unsuitable for a septic tank system. In March 1989, plaintiffs hired Joseph Hill, Jr., a professional engineer with a specialty in sanitary engineering to inspect the property. Mr. Hill concluded that the lot was not suitable for a septic tank system in 1987 or at the time of the trial.

LUMSDEN v. LAWING

[107 N.C. App. 493 (1992)]

The trial court made the following conclusions of law:

1. That this Court has jurisdiction over the parties and the subject matter of this proceeding.

2. That the property conveyed by the Defendants to the Plaintiffs was made subject to certain restrictive covenants restricting its use to single-family, residential use.

3. That at the time of the conveyance by the Defendants to the Plaintiffs, the property was subject to an implied warranty that this property could be used by the Plaintiffs, or by any subsequent grantees, for the specific purpose to which its use was limited by the restrictive covenants, referenced above.

4. That the property cannot now be properly used by the Plaintiffs, or by any subsequent grantees, for single-family residential purposes because of the inability of the property to support a septic tank or on-site sewage disposal system.

5. That the Defendants breached the implied warranty which arose out of said restrictive covenants.

6. That the Plaintiffs are entitled to rescind the contract of purchase with the Defendants, and recover, by way of restitution, the full purchase price, together with interest, ad valorem taxes, and expenses advanced in an attempt to repair the septic system, less the reasonable rental value of the premises.

The trial court then ordered defendants to pay plaintiffs the sum of $99,519.00 plus interest, ad valorem taxes of $1,824.64, repair costs of $325.00, less the reasonable rental value of $600.00 per month from March of 1987, provided that plaintiffs reconvey the property to defendants. The trial court later modified the judgment and ordered plaintiffs to pay interest from March 1987 on the reasonable rental value of the property.

Defendants raise one issue on appeal: whether the trial court erred in finding a breach of implied warranty and awarding plaintiffs rescission of the contract and restitution. Plaintiffs raise two issues on appeal: (1) whether the trial court erred in failing to award sums expended by plaintiffs for interest on their mortgage and hazard insurance premiums from March 1987 through 1990; and (2) whether the trial court erred in finding and crediting the

sums awarded plaintiffs with the "reasonable rental value" of the property from 1987.

We address defendants' assignment of error first. Defendants argue that the trial court's findings of fact and conclusions of law are inconsistent with the claims alleged in plaintiffs' complaint. Pointing to *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974) and *Hinson v. Jefferson*, 287 N.C. 422, 215 S.E.2d 102 (1975), defendants argue that there are two theories of implied warranty which relax the general rule of *caveat emptor*. According to defendants, *Hartley* recognizes an implied warranty of workmanlike construction when a builder-vendor sells a house to a vendee. *Hinson* recognizes a second implied warranty which arises out of restrictive covenants requiring the property to be used for single-family dwellings. If the property is unsuitable for a single-family dwelling, there is a breach of the restrictive covenant and breach of the implied warranty. Defendants argue that in the complaint plaintiffs alleged breach of the implied warranty of workmanlike construction found in *Hartley* and not breach of restrictive covenants found in *Hinson*. As reflected in the findings of fact and conclusions of law, the trial court based its decision on the breach of the implied warranty arising out of the restrictive covenants. Defendants conclude that since plaintiffs did not allege breach of the implied warranty arising out of the restrictive covenants, the variance in the complaint, evidence received, and judgment require us to remand the case for a trial de novo.

[1] We will not address the merits since defendants have failed to comply with our Rules of Appellate Procedure and have lost the right to challenge any variance between the complaint and the judgment. N.C.R. App. P. 10(c)(1) provides in part that each assignment of error, so far as practicable, shall be confined to a single issue of law and shall state the legal basis upon which the error is assigned. N.C.R. App. P. 28(b)(5) provides in part that assignments of error not set forth in the brief, not argued, and not supported by authority will be deemed abandoned. Failure to comply with these provisions results in a waiver of the right to challenge the sufficiency of the evidence to support particular findings of fact. *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 684, 340 S.E.2d 755, 760, *cert. denied*, 317 N.C. 333, 346 S.E.2d 137 (1986).

LUMSDEN v. LAWING

[107 N.C. App. 493 (1992)]

Defendants make the following single broadsided assignment of error.

> The Court's signing and entry of judgment in this case on grounds that error of law appears on the face of the record, the evidence does not support the facts found by the Court and the facts do not support the judgment entered.

Defendants' assignment of error does not set forth "plainly and concisely and without argumentation the basis upon which error is assigned." Defendants do not identify which findings of fact are not supported by the evidence. "A single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact, as here, is broadside and ineffective." *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review denied*, 313 N.C. 612, 330 S.E.2d 616 (1985). It is well settled that broadside appeals do not preserve the right to challenge particular findings of fact. *See, e.g., Concrete*, 79 N.C. at 684, 340 S.E.2d at 760; *Wade*, 72 N.C. App. at 376, 325 S.E.2d at 266. Moreover, defendants have failed to advance any argument in their brief challenging the sufficiency of the evidence to support the findings of fact or conclusions of law based thereon. Accordingly, we need only consider whether the findings of fact support the conclusions of law and the conclusions support the judgment. *Id.*

In *Hinson* plaintiff purchased a lot from defendants. In preparing to construct a residence on the property, plaintiff discovered that the lot would not support a septic tank or on-site sewage disposal system. Plaintiff brought suit against defendants for rescission of the purchase contract and restitution. Refusing to apply the doctrine of mutual mistake, the North Carolina Supreme Court recognized instead an exception to the rule of *caveat emptor* based on implied warranty of restrictive covenants. In 1974, the Court had approved the relaxation of the rule of *caveat emptor* by recognizing an implied warranty of workmanlike construction in the sale of a recently completed home by the builder-vendor to the vendee. *Hartley*, 286 N.C. at 62, 209 S.E.2d at 783. Relying upon the "basic and underlying principle of *Hartley* . . . that in some situations the rigid common law maxim of *caveat emptor* is inequitable," the *Hinson* Court held

> that where a grantor conveys land subject to restrictive covenants that limit its use to the construction of a single-family dwelling, and, due to subsequent disclosures, both un-

known to and not reasonably discoverable by the grantee before or at the time of conveyance, the property cannot be used by the grantee, or by any subsequent grantees through mesne conveyances, for the specific purpose to which its use is limited by the restrictive covenants, the grantor breaches an implied warranty arising out of said restrictive covenants.

*Hinson*, 287 N.C. at 435, 215 S.E.2d at 111. The trial court ordered rescission of the contract and awarded plaintiff "full restitution of the purchase price; provided that she execute and deliver a deed reconveying the subject lot to defendants." *Id.* at 436, 215 S.E.2d at 111.

In *George v. Veach*, 67 N.C. App. 674, 313 S.E.2d 920 (1984), the facts were strikingly similar to the case at bar. Plaintiffs there purchased from defendant-builder a house and lot with a septic tank system. A few months after plaintiffs occupied the house, the septic tank system failed. Plaintiffs brought suit for breach of implied warranty and unfair or deceptive trade practices. The plaintiffs presented evidence that the lot was unsuitable for a septic tank system because of the poor soil conditions. The county health department inspected the property and informed the defendant-builder that the lot was unsuitable for development. After the builder expressed his dissatisfaction with the finding, a state soil specialist conducted a further inspection. After the additional inspection the county health department official approved the lot on the condition that the lot be modified by a soil transplant. There was conflicting evidence whether the state soil specialist actually approved the soil transplant modification. Evidence was presented that the permit was issued in spite of the negative recommendation of the state expert and only after the builder expressed his displeasure. Additional evidence showed that the septic tank line had been placed in the wrong area and a drain had been improperly installed. At the close of plaintiffs' evidence the trial court directed verdict for defendant on all claims.

On appeal, we reversed, relying on *Hartley* and *Hinson* to conclude that the implied warranty does apply to the septic tank system itself. We also rejected defendant's contention that his reliance upon the approval of the county health department absolved him of liability for any breach of implied warranty. Following the principles of strict liability, we noted that "fault . . . is not a prerequisite to liability under the doctrine of implied warranty.

The initial vendee need only show that the house was not constructed in a workmanlike manner or was not habitable." *George,* 67 N.C. App. at 677-78, 313 S.E.2d at 923 (citation omitted). After reviewing the evidence, we concluded that

> [a]s between defendant-builder and plaintiff-buyers, then, the equities favor plaintiff-buyers, since defendant-builder apparently had some notice of the risk involved.
>
> Further, by virtue of superior knowledge, skill, and experience in the construction of houses, a builder-vendor is generally better positioned than the purchaser to know whether a house is suitable for habitation. He also is better positioned to evaluate and guard against the financial risk posed by a defective septic system, and to absorb and spread across the market of home purchasers the loss therefrom. In terms of risk distribution analysis, he is the preferred or "least cost" risk bearer. Finally, he is in a superior position to develop or utilize technology to prevent such defects; and as one commentator has noted, "the major pockets of strict liability in the law" derive from "cases where the potential victims . . . are not in a good position to make adjustments that might in the long run reduce or eliminate risk." R. Prosser, *Economic Analysis of Law* 140-41 (2d ed. 1977).

*Id.* at 679-80, 313 S.E.2d at 923-24. Finally, we noted that plaintiff met the burden of showing a septic tank system failure within the implied warranty determined by a standard of reasonableness. It was for the jury to decide whether the implied warranty extended for the six-month period. In concluding that the evidence was sufficient to go to the jury, we reasoned that "our Supreme Court's decisions in *Hartley* and *Hinson,* the equities of the situation, and the policy considerations which underlie the implied warranty doctrine, combine to dictate this result." *Id.* at 680, 313 S.E.2d at 924.

[2] In the case at bar, the trial court found that plaintiffs purchased the house and lot from the defendants without knowledge that the lot was unsuitable for a septic tank or on-site sewage system. A reasonable inspection by plaintiffs would not have disclosed that the lot was unsuitable for a septic tank. Five months after plaintiffs occupied the house, the ground adjacent to the septic tank began caving in and water and sand began bubbling out of the ground. Plaintiffs then learned that NHCHD initially determined the lot to be unsuitable for a septic tank. After plaintiffs

experienced problems, two experts concluded that the lot was un-suitable for a septic tank. The trial court further found that the deed of conveyance restricted the use of the lot to single-family dwellings. Plaintiffs began experiencing problems with the septic tank system well within the implied warranty time period. Based upon the findings of fact, the trial court properly concluded (1) that the property was subject to an implied warranty that it would be suitable for use as a single-family residence as set forth in the restrictive covenants; (2) that the property could not be used for a single-family residence since the lot could not support a septic tank; (3) that the defendants breached the implied warranty arising out of the restrictive covenants; and (4) plaintiffs were entitled to rescission of the contract and restitution. Defendants' assignment of error is overruled.

[3] We now turn our attention to plaintiffs' two assignments of error. Plaintiffs argue that the trial court erred in failing to award sums expended by plaintiffs for interest on the mortgage and hazard insurance premiums for 1987-1990, and in reducing plaintiffs' award by the reasonable rental value of the premises.

A rescission implies the entire abrogation and undoing of the contract from the beginning. *Brannock v. Fletcher*, 271 N.C. 65, 74, 155 S.E.2d 532, 542 (1967). "A plaintiff may not sue for the rescission of a contract and its breach at the same time. The one is in disaffirmance of the contract; the other in its affirmance." *Troitino v. Goodman*, 225 N.C. 406, 415, 35 S.E.2d 277, 283 (1945) (citation omitted). Accordingly, in the case of rescission ordinarily a party may not seek damages arising out of the breach of contract such as benefit of the bargain and special damages. *Kee v. Dillingham*, 229 N.C. 262, 265-66, 49 S.E.2d 510, 512 (1948); *Opsahl v. Pinehurst, Inc.*, 81 N.C. App. 56, 70, 344 S.E.2d 68, 77 (1986). A party may recover special damages, however, in the case of rescission of a contract due to fraud. *Id.* In the case at bar the trial court dismissed plaintiffs' claim for fraud. We are left then with the question of appropriate damages for breach of the implied warranty arising out of restrictive covenants.

Defendants argue that requiring payment to plaintiffs of the sums expended on interest and the insurance premiums would be counter to the principles of restitution since defendants did not receive nor benefit from those amounts. Defendants point to *Gilbert v. West*, 211 N.C. 465, 466, 190 S.E. 727, 728 (1937), in which the

North Carolina Supreme Court stated: "When a court in the exercise of its equitable jurisdiction cancels a contract or deed, it should seek to place the parties *in statu quo*, as nearly as this can be done, for while one party to the contract or deed may have been wronged by the other, the court does not undertake by its judgment to punish the wrongdoer."

We agree that in placing the parties "*in statu quo*" the purpose is not to punish the breaching party. We also acknowledge that a breach of implied warranty is not dependent upon a finding of seller's fault. *See George*, 67 N.C. App. 674, 313 S.E.2d 920. Nonetheless, the equities of the present case, require us to find that as between the seller and the buyer, the seller should be responsible for the sums expended by the buyer on mortgage interest and insurance premiums. In *Hinson*, we recognize that in some situations strict application of the common law rule of *caveat emptor* would result in an inequitable result. We found such a situation in *George*.

Although *George* did not address the issue of damages arising out of the breach of the implied warranty, similar reasoning supports our conclusion that the defendant-builder should bear the loss incurred as a result of his breach. A strict application of the rules of restitution would create an inequitable result. The evidence shows that upon the developer's request for a septic tank permit, the NHCHD initially classified the lot as unsuitable for installation of a septic tank system in June 1986. The site evaluation, however, included modifications that the applicant could make in order to make the lot provisionally suitable. Defendants purchased the lot from the developer and applied for a septic tank permit. NHCHD again classified the lot as unsuitable and suggested certain modifications to make the lot suitable. Defendants made modifications to the lot and installed a septic tank system. In January 1987, the NHCHD inspected the system and certified that the system met the requirements of the permit. Plaintiffs visited the property in January or February of 1987 and signed a contract to purchase on 10 February 1987. Defendants did not inform plaintiffs of the various classifications of the NHCHD and the modifications made to the lot. When plaintiffs began experiencing problems with the system within five months after moving in, they contacted NHCHD and the subcontractor who had installed the system. On 15 September 1987, representatives of the NHCHD inspected the property and noted that the system had not been constructed in accordance

with the plan filed with NHCHD. Plaintiffs then obtained copies of the previous classifications and learned of the initial unsuitable classification. Plaintiffs contacted defendants who denied any responsibility and refused to absorb any of the cost expended in installing an additional line in an attempt to remedy the problem. In December 1987 the additional line failed. In February 1988 representatives of NHCHD conducted another inspection and determined that the lot was unable to absorb water thereby causing failure of the septic tank system. Throughout 1988 plaintiffs experienced problems with the system. In 1989, two experts, one hired by plaintiffs and one a representative of NHCHD, concluded that the lot could not support a septic tank system.

As in *George*, the equities favor plaintiff-buyers since defendant-builders were on notice of the risk involved, had superior knowledge of whether the house was suitable for habitation, and were in a better position to evaluate and guard against the financial risk posed by a defective septic system. One of the primary goals of equity is to do justice between the parties. Under the facts of this case, it is unjust to allow plaintiffs to absorb the costs of the mortgage interest and insurance premiums and pay reasonable rental value for use of the house during their occupancy. Therefore, we find in addition to the full purchase price, interest, ad valorem taxes, and expenses advanced in repair of the septic tank, plaintiffs are also entitled to the sums expended on mortgage interest and insurance premiums.

[4] We agree with defendants that plaintiffs are obligated to pay the reasonable rental value of the premises during plaintiffs' occupancy. *See Brannock*, 271 N.C. at 75, 155 S.E.2d at 542. We are unpersuaded, however, by defendants' argument that there was sufficient evidence to support the trial court's finding of the reasonable rental value of $600.00 based upon testimony of plaintiffs' "normal" use of the dwelling and the mortgage payment of $604.00. A mortgage payment is not necessarily a reliable indicator of rental value since such payments are dependent upon the amount of down payment, the interest rate, and the length of the mortgage. We remand for the taking of additional evidence on this issue.

Accordingly, the judgment below is

Affirmed in part; remanded for further proceedings.

Judges ARNOLD and LEWIS concur.