46 N.J. Super. 293 (1957)
134 A.2d 717
CHARLES B. LEVY AND ELSA K. LEVY, PLAINTIFFS-RESPONDENTS,
v.
C. YOUNG CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered August 12, 1957.
Decided September 20, 1957.
*294 Before Judges GOLDMANN, WAESCHE and KNIGHT.
Mr. James A. Major argued the cause for the respondent.
Mr. Pierre P. Garven argued the cause for the appellant (Messrs. Garven, Gelman & Hollander, attorneys; Messrs. George B. Gelman and David A. Gelber, of counsel).
The opinion of the court was delivered by KNIGHT, J.S.C. (temporarily assigned).
Defendant appeals from a county district court judgment entered in plaintiffs' favor in an action brought to recover the costs they incurred in replacing a sewer line connecting the dwelling they had purchased from defendant to the main *295 sewer line in the street. The action was tried by a judge sitting without a jury. He filed no opinion. The matter comes before us on a statement of evidence and proceedings, R.R. 1:6-3.
In June 1952 plaintiffs purchased a newly constructed house from defendant builder. The house sewerage system was connected to the municipal sewer line by a pipe located between six and eight feet below ground level, running from the house to the street a distance of about 62 feet. This line had been installed by defendant prior to plaintiffs' acquisition of title.
About a year after the purchase plaintiffs encountered difficulty from water backing into the cellar. They called a plumber who inserted a snake into the sewer line and removed an obstruction. No further difficulty was encountered until about a year later, when a similar condition was again remedied by the use of an electric rooter. In April 1955, almost three years after the original purchase, there again was water in the cellar. Thereupon the same plumber excavated at a point where the house sewer pipe connected with the main sewer line in the street, and discovered that a six-foot section of the house line was buckled and broken. He proceeded to insert a temporary six-foot section, and for a period of two months there was no trouble with the line. Thereafter, upon his recommendation, plaintiffs replaced the entire sewer line between the house and the street. They then sued for their expenses and obtained a judgment of $649.99 and costs. This appeal followed.
In their complaint plaintiffs alleged that in constructing the house defendant "was under a duty" to see that it was built "in a good and workmanlike manner with suitable materials"; that the sewer pipes "were not properly laid, as a result of which they were broken," making the sewerage disposal system ineffective; and as a result they were forced to replace the pipes and soil cover.
To recover in tort, plaintiffs would have to show that defendant inflicted personal injury or property damage upon them. The statement of evidence and proceedings *296 discloses no fact establishing negligence, so that plaintiffs have failed to prove an actionable tort claim. Anything defendant did occurred while it was the owner of the premises, and not after plaintiffs took title.
To prevail, the burden was on plaintiffs to establish a duty owed them by defendant and which it had breached. Such a duty would have to grow out of an express or an implied warranty. Although the contract and deed were not introduced in evidence, counsel agreed at oral argument to make them available to the court, in the exercise of its original jurisdiction, R.R. 1:5-4(a), so that there might be a complete determination of the cause on review. There is nothing in either the contract of purchase or in the deed which spells out an agreement by defendant to sell plaintiffs a well constructed house. There is no warranty of construction.
Ultimately, then, plaintiffs must justify a recovery on the basis of an implied warranty. Defendant contends that the acceptance of a deed by the purchaser from the vendor terminates the contractual relationship between the parties, and their respective rights and liabilities are thereafter determined solely by the deed and not by the contract of sale. This argument fairly summarizes prevailing law throughout the country. Campbell v. Heller, 36 N.J. Super. 361 (Ch. Div. 1955); Dieckman v. Walser, 114 N.J. Eq. 382 (E. & A. 1933); 2 Restatement, Contracts, § 413, p. 778 (1932); 4 Williston, Contracts (rev. ed. 1936), § 926, p. 2602; 55 Am. Jur., Vendor and Purchaser, § 368, p. 795 (1946); 38 A.L.R.2d 1310 (1954); 8 A.L.R.2d 218 (1949). Although the doctrine of caveat emptor, so far as personal property is concerned, is very nearly abolished, it still remains as a viable doctrine in full force in the law of real estate. Absent any covenant binding defendant to sell a well constructed house, plaintiffs cannot sue on an implied warranty. Williston, supra. That the rule of caveat emptor applies, and that there are no implied warranties in the sale of real estate, has been criticized, especially when applied to the sale of new housing, "Vendor's Obligation *297 as to Fitness of Land for a Particular Purpose," 77 Minn. L. Rev. 108 (1953); and see "Right of Purchaser in Sale of Defective House," 4 Western Reserve L. Rev. 357 (1953).
A builder who sells a completed house is thereafter not liable to the purchaser for damages resulting from latent defects in the absence of express warranties in the deed or fraud or concealment. Neither fraud nor concealment is present here. The cases of Berger v. Burkoff, 200 Md. 561, 92 A.2d 376 (Ct. App. 1952); Allen v. Reichert, 73 Ariz. 91, 237 P.2d 818 (Sup. Ct. 1951); Combow v. Kansas City Ground Investment Co., 358 Mo. 934, 218 S.W.2d 539, 8 A.L.R.2d 213 (Sup. Ct. 1949); Otto v. Bolton & Norris, 2 K.B. 46, 1 All Eng. 960 (1936); and the cases collected in 8 A.L.R.2d 218 (1949), support defendant's contention.
The authorities cited by plaintiffs to avoid the established doctrine fall into two groups. In the first are cases of contracts for construction, all of which rest on the proposition that a party to such a contract is obligated to perform it properly. These authorities have no application to the facts of this case because the building was erected and the work completed before the transfer of ownership on June 3, 1952. The second group of cases deals with the concealment of known defects. These authorities are of no aid to plaintiffs since, even if we assume there was a defect (a matter which the record leaves in substantial doubt), there is nothing whatever in the statement of evidence and proceedings to indicate that such a defect in the sewer line was known to defendant, so that neither fraud nor concealment, as we have already stated, was present here.
As defendant notes, the policy reasons underlying the rule that the acceptance of a deed without covenants as to construction is the cut-off point so far as the vendor's liability is concerned, are rather obvious. Were plaintiffs successful under the facts presented to us, an element of uncertainty would pervade the entire real estate field. Real estate transactions would become chaotic if vendors were subjected to liability after they had parted with ownership and control of the premises. They could never be certain as to *298 the limits or termination of their liability. The rule which we impose in the circumstances of the present action works no harshness on purchasers of real estate. Plaintiffs had an opportunity to protect themselves by extracting warranties or guaranties from defendant in the contract of sale and by reserving them in the deed. This is not an uncommon practice, and when pursued allows both vendor and purchaser to know the nature and extent of their rights and liabilities and to order their affairs accordingly.
Having failed to establish tort liability, or to prove any basis for contractual liability, whether express or implied, on defendant's part, plaintiffs were not entitled to judgment in this action.
Reversed.
WAESCHE, J.S.C. (temporarily assigned) (dissenting).
The defendant is a developer, and erected the house involved in this suit to sell to any one who would want it for a home. The plaintiff was such a person.
Since the defendant was in the business of erecting houses to sell, it represented that it possessed a reasonable amount of skill necessary for the erection of a house. This representation was impliedly made to whomever purchased from the defendant a house erected by it for the purpose of selling. Such a representation is indispensable to effectuate the sale of a house erected, by a developer, for the purpose of selling. Otherwise, there would be no sales. A person in the business of building houses to sell is fully aware that a purchaser relies upon such an implied representation. Since the defendant impliedly represented that it possessed a reasonable amount of skill requisite for the erection of a house, it follows that it also impliedly represented that the house was erected in a proper and reasonably workmanlike manner. Such representations as above mentioned are essential to good faith and fair dealing in the business of this nature; and good faith and fair dealing are implied in every contract of sale of a house. That which is implied in a contract is as much a part of it as that which is expressed.
*299 The conveyance of the house by deed to the plaintiff, and his acceptance of the deed is deemed a waiver of any defects of which the purchaser had knowledge, or of which he could have discovered by an inspection of the house; but the acceptance of the deed for the house did not waive or impair plaintiff's right to claim and obtain damages for latent or hidden defects in the construction of the house. I think that the implied representations on the part of the defendant that it possessed a reasonable amount of skill necessary for the erection of a house, and that the house was erected in a proper and reasonably workmanlike manner were collateral to the deed of conveyance and that such representations did not merge in said deed. Bogert v. Citizens First National Bank, etc., Co., 131 N.J.L. 218 (E. & A. 1944); Weinberg v. Wilensky, 26 N.J. Super. 301 (App. Div. 1953).
The judgment in the Bergen County District Court should be sustained.