RONALD W. LYON AND WIFE, JUDITH M. LYON, PLAINTIFFS v. JIM WARD, T/A JIM WARD CONSTRUCTION COMPANY, DEFENDANT AND THIRD PARTY PLAINTIFF v. BAINBRIDGE AND DANCE WELL DRILLING CONTRACTORS, INC., THIRD PARTY DEFENDANT

No. 7518DC717

(Filed 4 February 1976)

1. Sales § 6; Vendor and Purchaser § 6— initial sale of house — implied warranty as to water supply

The builder-vendor of a house impliedly warrants to the initial purchaser that, at the time of passing of the deed or the taking of

---

Lyon v. Ward

---

possession, a well constructed on the premises by the builder-vendor will provide an adequate and usable supply of water for the house under normal use and conditions.

2. **Sales § 6; Contracts § 12— driller of well — no guarantee of water quantity**

The trial court properly found that a contractor who drilled a well for a builder-vendor was under no legal duty to insure a water supply of any particular quantity or quality where there was no express contractual responsibility to provide an adequate supply of water and it was understood that the well was being drilled in a "high risk area" and there was no guarantee that the well would produce water at all.

APPEAL by defendant from *Kuykendall, Judge.* Judgment entered 20 May 1975 in District Court, GUILFORD County. Heard in the Court of Appeals 12 January 1976.

This is a civil action wherein the plaintiffs, Ronald W. Lyon and his wife, Judith M. Lyon (purchasers) seek to recover damages from the defendant, Jim Ward, (builder-vendor) for an alleged breach of an implied warranty with respect to the water supply in a house built and sold by defendant to the plaintiffs. The builder-vendor filed a cross-action against Bainbridge and Dance Well Drilling Contractors, Inc., (Bainbridge) who drilled the well supplying water to the house, for indemnification against any liability Ward might incur to the purchasers.

After trial before a judge without a jury, the court made findings which except where quoted are summarized as follows.

On 6 March 1973, plaintiffs purchased a pre-constructed house and lot from defendant located at 914 Cocoa Drive, Guilford County, for a purchase price of $31,000.00. Prior to the sale the defendant was the owner of the property and the general contractor for the house and other improvements. Shortly after plaintiffs took up residence on the premises, they discovered problems with the water supply. The defendant and his employees had used the water system prior to the sale and had not discovered anything wrong with it.

"4. Third party defendant contracted with defendant to drill the well, install the well casing, install the pump, and place the cap over the well. Third party defendant did not make any guarantee to defendant about the supply of water that would be obtained from the well.

5. The well and its components and the water system were sold by defendant to plaintiffs as an integral part of the dwelling house on the property acquired by plaintiffs.

6. The well on the property sold to plaintiffs was structurally defective and was not constructed in a workmanlike manner, in that only a very small quantity of water was provided by the well, and foreign particles were always present in the water. Plaintiffs and their family ran out of water under conditions of normal use on the average of two or three days per week. Plaintiffs were unable to use large amounts of water at any time, and could not wash their cars, water their lawn, or water their garden. Plaintiffs had to obtain disposable diapers for their baby, because there was not enough water in the system to wash diapers. Plaintiffs also encountered an abnormally bitter taste in the water.

*    *    *

8. The difference in value between the dwelling house and lot, as impiedly warranted by defendant to plaintiffs, and as delivered by defendant to plaintiffs, is $1500.00, by reason of the inadequate water supply."

Based on these findings, the court made the following conclusions of law.

"1. The well and water supply system in this case were fixtures of the dwelling house.

2. The inadequacy of the well constituted a major structural defect of one of the fixtures of the dwelling house, and the water system was not constructed in a workmanlike manner.

3. As the owner and contractor of a speculative house, defendant impliedly warranted to plaintiffs, at time title passed, that the house and its fixtures were constructed with ordinary skill, in a workmanlike manner, and were free from major structural defects.

4. Defendant's implied warranty to plaintiffs was breached by the insufficient quantity of water and the poor quality of the water.

5. Plaintiffs are entitled to recover of defendant their damages proximately caused by the breach of warranty,

consisting of the difference between the value of the property, as warranted, and its value, as delivered.

6. Third party defendant did not have a contract with defendant, and had no other legal duty to defendant, to insure a water supply of any particular quantity or quality.

7. Defendant has no right of recovery against third party defendant."

From a judgment that the plaintiffs recover $1500.00 from the defendant, Jim Ward, he appealed.

*Smith, Patterson, Follin, Curtis & James by Norman B. Smith for plaintiff appellee.*

*Frassinetti & Shaw by Eugene G. Shaw, Jr., for defendant, Jim Ward, appellant.*

*No counsel for third party defendant, Bainbridge & Dance Well Drilling Contractors, Inc.*

HEDRICK, Judge.

[1] The principal question presented by this appeal is whether the builder-vendor, Jim Ward, impliedly warranted to the initial purchasers that the well constructed on the premises by him and sold as an integral part of the house would provide an adequate, usable water supply for the house.

In *Hartley v. Ballou,* 286 N.C. 51, 209 S.E. 2d 776 (1974), Chief Justice Bobbitt said:

"[W]e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee." *Id.* at 62.

---

---

In *Hartley,* there was no evidence that any part of the house was not constructed in a workmanlike manner or that it was not free from major structural defects other than the evidence that water seeped into the basement floor during normal weather conditions. Thus, we interpret *Hartley* to stand for the proposition that a builder-vendor impliedly warrants to the initial purchaser that a house and all its fixtures will provide the service or protection for which it was intended under normal use and conditions.

Justice Copeland, speaking for the Supreme Court in *Hinson v. Jefferson,* 287 N.C. 422, 215 S.E. 2d 102 (1975), said: "The basic and underlying principle of *Hartley* is a recognition that in some situations the rigid common law maxim of *caveat emptor* is inequitable." *Id.* at 435. In relaxing the rule of *caveat emptor,* North Carolina has followed the developing trend in the United States which recognizes that there ought to be an implicit understanding of the parties when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used. *Tavares v. Horstman,* ____ P. 2d ____ (Wyo. Sup. Ct. 12/13/1975) ; *See also Humber v. Morton,* 426 S.W. 2d 554 (Tex. 1968) ; *Bethlahmy v. Bechtel,* 91 Ida. 55, 415 P. 2d 698 (1966) ; *Schipper v. Levitt & Son's, Inc.,* 44 N.J. 70, 207 A. 2d 314 (1965) ; *Carpenter v. Donohoe,* 154 Col. 78, 388 P. 2d 399 (1964) ; *McKeever v. Mercaldo,* 3 Pa. D & C 2d 188 (1954) ; *and see,* 25 A.L.R. 3d 383 (1969) and authorities cited therein. As said in *Humber v. Morton, supra* at 562, "The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser, but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work."

Because an adequate supply of usable water is an absolute essential utility to a dwelling house, we believe that the initial purchaser of a house from the builder-vendor can reasonably expect that a well constructed on the premises by the builder-vendor will provide an adequate supply of usable water. We hold that at the time of the passing of the deed or the taking of possession the builder-vendor of a house impliedly warrants to the initial purchaser that a well constructed on the premises by him will provide water for the dwelling house which is adequate and usable. In the record before us, there is sufficient evidence to support the finding that the defendant owned the lot upon which he built the house and the well which he sold to the

plaintiffs and that the well did not provide an adequate and usable supply of water for the house under normal use and conditions. These findings support the conclusion that the defendant as a builder-vendor breached his implied warranty that the well would provide adequate water for the plaintiffs, and the plaintiffs are entitled to damages for such breach.

[2] The defendant also excepts to the court's conclusion that the "[t]hird party defendant did not have a contract with defendant, and had no other legal duty to defendant, to insure a water supply of any particular quantity or quality." The contract which was introduced into evidence shows clearly there was no *express* contractual responsibility for Bainbridge to provide an adequate supply of water. Indeed, as between Bainbridge and Ward, it was understood that the area was a "high risk area" and there was no guarantee that the well would produce water at all. The expectations of a builder-vendor who subcontracts the work of drilling a well are entirely different from the expectations of a prospective home purchaser. The court's finding of fact that there was no guarantee of water by Bainbridge to Ward is supported by the evidence in the record. Accordingly, this assignment of error is overruled.

Affirmed.

Judges PARKER and ARNOLD concur.