DANIEL J. SULLIVAN AND WIFE, MARY T. SULLIVAN v. K. J. SMITH, IN-
    DIVIDUALLY AND D/B/A K. J. SMITH BUILDERS & REALTY, AND GIRRIE M.
    HOOKER, JR.

No. 8118SC515

(Filed 6 April 1982)

1. **Negligence § 2— negligence in performance of construction—judgment n.o.v. improper**

In an action in which plaintiff homeowner sought damages resulting from a fire in the fireplace which defendant subcontractor constructed under the guidance of defendant contractor, the trial court erred in granting judgment n.o.v. for defendant contractor. Plaintiffs' evidence was sufficient as a matter of law to support jury findings that defendant subcontractor negligently constructed the fireplace, that this negligent construction proximately caused plaintiffs' damage, and that defendant contractor breached his duty to act as a reasonably careful and prudent contractor under the circumstances in that he knew or should have known of the defective workmanship of his subcontractor.

2. **Indemnity § 3; Master and Servant § 21—liability of contractor independent of subcontractor—no right of indemnification**

In an action concerning the negligent construction of a fireplace, plaintiffs' release of the subcontractor did not operate to release the contractor since the contractor was not entitled to indemnification from the subcontractor. The evidence permitted findings that both defendants were actively negligent; that neither was derivatively liable through the other; and that both were responsible for plaintiffs' damages. The release did not by its terms discharge the contractor, but instead expressly excluded him from its operation.

3. **Trial § 52— new trial on grounds of inadequate damages—trial court's discretion**

The award of a new trial on the issue of damages was not an abuse of discretion where the jury returned a verdict for plaintiffs of $10,000 and in light of evidence that a fire caused by defendants' negligent supervision in the construction of plaintiffs' fireplace reduced the fair market value of plaintiffs' house from $71,000 to $12,000; that the fire completely destroyed personal property in the house having a fair market value of over $47,000; and that plaintiffs incurred lodging expenses of $2,231.84 while their home was being repaired.

APPEAL by plaintiff from *Collier, Judge.* Order entered 23 February 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 13 January 1982.

Defendant Smith was the general contractor on a house which plaintiffs purchased from his original vendees. Smith had hired defendant Hooker, a masonry subcontractor, to construct

the fireplace and chimney. Plaintiffs sought from both defendants damages resulting from a fire in the fireplace which spread to adjacent wooden structures. Defendant Smith cross-claimed for indemnity from defendant Hooker.

Before trial plaintiffs released defendant Hooker and voluntarily dismissed their action against him. The court ordered dismissal of defendant Smith's cross-claim.

Following a verdict for plaintiffs the court granted defendant Smith's motion for judgment notwithstanding the verdict (hereafter "judgment NOV") and conditionally granted plaintiffs' motion for a new trial on the issue of damages should the judgment NOV be vacated or reversed.

Plaintiffs appeal from the granting of judgment NOV.

*Smith, Moore, Smith, Schell & Hunter, by Stephen W. Earp and Alan W. Duncan, for plaintiff appellants.*

*Benjamin D. Haines for defendant appellee, K. J. Smith, Individually and d/b/a K. J. Smith Builders & Realty.*

WHICHARD, Judge.

Plaintiffs' sole contention is that the court erred in granting defendant Smith's motion for judgment NOV. We agree, and accordingly reverse.

A motion for judgment NOV "shall be granted if it appears that the motion for directed verdict could properly have been granted." G.S. 1A-1, Rule 50(b)(1). A directed verdict or a judgment NOV for a defendant is improper when a plaintiff's evidence, taken as true and considered in the light most favorable to him, with all inferences made and contradictions resolved in his favor, is sufficient as a matter of law to justify a verdict for plaintiff. *Clark v. Bodycombe*, 289 N.C. 246, 221 S.E. 2d 506 (1976); *Horton v. Insurance Co.*, 9 N.C. App. 140, 175 S.E. 2d 725 (1970); *see also Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974); *Ridge v. Grimes*, 53 N.C. App. 619, 281 S.E. 2d 448 (1981).

Applying these principles to the evidence here, we find the following:

A structural engineer who examined the fireplace and chimney testified that the interior fireplace bricks did not con-

stitute "solid masonry construction" due to numerous gaps in the mortar, and that in his opinion the construction thus violated the North Carolina Residential Building Code which "specifies that a fireplace shall be constructed of solid masonry construction." *See* North Carolina Uniform Residential Building Code § 16(5); North Carolina State Building Code § 2716. The North Carolina State Building Code, which was in effect when plaintiff's house was constructed, was adopted pursuant to authorization by G.S. 143-138. It thus had the force and effect of a statute, and violation of its provisions constituted negligence *per se. Drum v. Bisaner,* 252 N.C. 305, 113 S.E. 2d 560 (1960). *See also Jenkins v. Electric Co.,* 254 N.C. 553, 119 S.E. 2d 767 (1961); *Lindstrom v. Chesnutt,* 15 N.C. App. 15, 189 S.E. 2d 749, *cert. denied,* 281 N.C. 757, 191 S.E. 2d 361 (1972). The engineer's testimony thus permitted a finding of negligence in construction of the fireplace.

Further evidence permitted both that finding and a finding that the negligent construction proximately caused the fire and resultant damage. A fire department official who inspected the premises after the fire testified that "there were gaps in some of the bricks, small areas that did not have mortar in them"; that there "were actually holes going back into the chimney area . . . or the interior of the fireplace"; and that "[t]here were gaps . . . through the layers of brick exceeding twenty-eight inches." He further testified that in his opinion "some spark . . . traveled through these crevices or openings in the bricks and came to rest on [the] wood . . . causing the fire," and that "an escaping spark or ash from the fireplace flowing upward from any point that it may have e[s]caped the fireplace . . . came in contact with the wooden plate that . . . appeared to have been the longest burning area . . ., igniting the wood or dust or whatever items were there . . . ."

[1] The foregoing evidence, in the light most favorable to plaintiffs, permitted a finding that the masonry subcontractor, defendant Hooker, negligently constructed the fireplace, and that this negligent construction proximately caused the fire. The case could go to the jury against the general contractor, defendant Smith, however, only if the evidence permitted a finding that he too violated some duty. "It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his act o[r] omission or that consequences

of a generally injurious nature might have been expected." *McIntyre v. Elevator Co.*, 230 N.C. 539, 544, 54 S.E. 2d 45, 48 (1949).

When ruling on defendant Smith's motion for directed verdict, the court stated that it would allow the case to go to the jury on the principle enunciated in *Lindstrom v. Chesnutt, supra,* "as to whether [defendant Smith] exercised the degree of supervision that a reasonably careful and prudent person would have under the same or similar circumstances." That ruling was proper, and the subsequent grant of judgment NOV thus was improper.

In *Lindstrom* this Court (and, by denial of certiorari, the Supreme Court) approved, at least implicitly, the following instruction:

> [The contractor] would be responsible for any actions of his subcontractors either in failing to use good quality materials or to construct in a workmanlike manner, or any negligent conduct on their part, if he knew or reasonably should have known as general contractor or builder of the house of those conditions. He is not to be responsible for any such things which a reasonable man in his position as builder and contractor of the house would not have discovered, but the mere fact that work was done by a subcontractor does not relieve the contractor of responsibility if he by the exercise of reasonable care knew or should have known of those conditions.

*Lindstrom*, 15 N.C. App. at 23, 189 S.E. 2d at 755. Plaintiffs presented evidence which permitted a jury finding that defendant Smith, as a reasonably careful and prudent contractor under the circumstances, knew or should have known of the defective workmanship of his subcontractor, defendant Hooker. Defendant Hooker testified that he "saw [defendant Smith] on the job from time to time during the two weeks that [he] built [the] chimney and fireplace," but that he "never saw him looking at the work [Hooker] was doing." He further testified that the exterior brick work was visible while it was under construction; that the exterior and interior bricks "go [up] together"; that other contractors "usually [went] up and look[ed] at the work outside of the fireplace and chimney that they [could] see" when he first did a

---

---

job for them; and that this was the first job he had done for defendant Smith.

"The *standard of care* is a part of the law of the case for the court to explain and apply. The *degree of care* required, under the particular circumstances, to measure up to the standard is for the jury to decide." *Tindle v. Denny*, 3 N.C. App. 567, 570, 165 S.E. 2d 351, 354 (1969). Here the court established as the standard of care the conduct of "a reasonabl[e] . . . and prudent contractor . . . under the same or similar circumstances." It instructed that to adjudge defendant Smith negligent the jury had to find that (1) the fireplace was constructed by defendant Hooker in a negligent manner, (2) this negligent construction was the proximate cause of the fire, and (3) defendant Smith, as the general contractor, knew or reasonably should have known of defendant Hooker's negligence, that knowledge being what a reasonably careful and prudent contractor would have known under the same or similar circumstances. It was for the jury to determine, pursuant to these proper instructions as to the standard of care, whether the evidence showed that the degree of care exercised by defendant Smith "measur[ed] up" to the standard. *Id.*

Defendant Smith's argument that the motion for judgment NOV was properly granted because the evidence tended to show that his "standard of conduct . . . was the same standard that builders in the . . . area adopted or adhered to and there was no breach of this standard or deviation from same" is unavailing. Defendant Hooker's testimony that other contractors "usually look[ed] around" his work on the first job he performed for them, and that defendant Smith had not, contradicted the evidence to which defendant Smith refers. Further, a finding of no breach of duty as a matter of law would not necessarily follow from uncontradicted evidence that defendant Smith observed the standard of care followed by other builders in the area.

> [T]he better view . . . is that of the great majority of the cases, that every custom is not conclusive merely because it is a custom, and that it must meet the challenge of "learned reason," and be given only the evidentiary weight which the situation deserves. It follows that where common knowledge and ordinary judgment will recognize unreasonable danger, what everyone does may be found to be negligent . . . .

W. Prosser, Law of Torts § 33 at 167-68 (4th ed. 1971).

Nothing else appearing, then, plaintiffs' evidence, taken as true and considered in the light most favorable to them, with all inferences made and contradictions resolved in their favor, was sufficient as a matter of law to support jury findings that defendant Hooker negligently constructed the fireplace, that this negligent construction proximately caused plaintiffs' damage, and that defendant Smith breached his duty to act as a reasonably careful and prudent contractor under the circumstances.

[2] Defendant Smith contends that judgment NOV was nevertheless proper because plaintiffs' release of defendant Hooker also operated to release defendant Smith. The release specifically provided the contrary. It stated: "This Release applies only to the parties named above [i.e., defendant Hooker, his employees, insurer, heirs, representatives, and assigns] and shall not apply to K. J. Smith, individually or doing business as K. J. Smith Builders & Realty, or to any other person, corporation or entity." Defendant Smith thus was not released unless the instrument, despite its express provision to the contrary, effected his release as a matter of law. It did not.

Defendant Smith contends that because defendant Hooker "is entitled to be relieved of defending a cross-action by [defendant Smith], . . . Smith is deprived of his right of indemnification which arises as a matter of law, [and] the party responsible voluntarily for the extinguishment of the rights of indemnification of . . . Smith, namely, the plaintiffs, must sustain a dismissal as to the defendant Smith." He relies primarily on *Brown v. Louisburg*, 126 N.C. 701, 36 S.E. 166 (1900). *Brown* is in apposite, and the argument is without merit.

In *Brown* the individual defendant constructed an excavation abutting the municipal defendant's sidewalk. The municipal defendant knew of the excavation, but had no active part in creating it. Plaintiff fell into the excavation and was injured. During pendency of the action plaintiff released the individual defendant. The court held that under these facts the municipal defendant could recover from the individual defendant any sum which plaintiff obtained from it, and that the court thus "should have instructed . . . that upon the evidence the plaintiff could not recover." *Brown*, 126 N.C. at 704, 36 S.E. at 167. The court stated:

> The defendants were not . . . joint tort feasors. To make persons joint tort feasors they must actively participate in the act which causes the injury. The [municipal defendant] had no active part in . . . creating the nuisance. The authorities . . . knew, or ought to have known, of the excavation in the street; but [the individual defendant] did not act under the directions of [the municipal defendant], nor were his acts in any way for its benefit.

*Id.* at 703, 36 S.E. at 167.

Here, by contrast, there was evidence from which the jury could find that both defendants were actively negligent and that they thus were joint tortfeasors. Defendant Hooker had a duty to use good quality materials and to construct in a workmanlike manner. Defendant Smith had an independent duty of supervision which required that he oversee the proper performance by defendant Hooker of Hooker's duty. *Lindstrom v. Chesnutt, supra.* Further, unlike in *Brown*, defendant Hooker did act or should have acted under the direction of defendant Smith; and the acts of defendant Hooker were performed for defendant Smith's benefit.

A right to indemnity arises in cases of primary-secondary liability, *i.e.*, when two persons

> (1) . . . are jointly and severally liable to the plaintiff . . . and (2) either (a) one has been passively negligent but is exposed to liability through the active negligence of the other or (b) one alone has done the act which produced the injury but the other is derivatively liable for the negligence of the former.

*Hendricks v. Fay, Inc.*, 273 N.C. 59, 62, 159 S.E. 2d 362, 365 (1968). *See also Edwards v. Hamill*, 262 N.C. 528, 531, 138 S.E. 2d 151, 153 (1964). This is not such a case. The evidence did not establish conclusively that defendant Smith was "passively negligent but . . . exposed to liability through the active negligence of [defendant Hooker]." *Hendricks*, 273 N.C. at 62, 159 S.E. 2d at 365. Rather, it permitted a finding that defendant Smith was himself actively negligent in the exercise of, or failure to exercise, his duty of supervision of defendant Hooker. Further, it was stipulated that defendant Hooker "at all times . . . was acting as an in-

dependent subcontractor of [defendant Smith]." "[I]t has long been . . . the general rule that there is no vicarious liability upon the employer" for the torts of an independent contractor. *Id.* Hence, defendant Smith was not "derivatively liable" for the negligence of defendant Hooker.

Defendant Smith, then, was not entitled to indemnification from defendant Hooker. The evidence permitted findings that both defendants were actively negligent; that neither was derivatively liable through the other; and that both were responsible for plaintiffs' damages. The effect of plaintiffs' release of defendant Hooker is thus governed by the following from the Uniform Contribution among Tort-Feasors Act:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . [i]t does not discharge any of the other tort-feasors from liability for the injury . . . unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater . . . .

G.S. 1B-4 (1967). As noted above, the release here did not by its terms discharge defendant Smith, but instead expressly excluded him from its operation. He thus was not thereby discharged from liability. *Id.*

**[3]** Plaintiffs' motion for a new trial on grounds of inadequate damages was addressed to the sound discretion of the trial court, and the ruling thereon will not be set aside except upon a showing of abuse of discretion. *Railway Co. v. Fibres, Inc.,* 41 N.C. App. 694, 255 S.E. 2d 749, *cert. denied,* 298 N.C. 299, 259 S.E. 2d 302 (1979); *Gwaltney v. Keaton,* 29 N.C. App. 91, 223 S.E. 2d 506 (1976). The jury returned a verdict for plaintiffs of $10,000. There was evidence that the fire reduced the fair market value of plaintiffs' house from $71,000 to $12,000. There was also evidence that the fire completely destroyed personal property in the house having a fair market value of over $47,000, and that plaintiffs incurred lodging expenses of $2,231.84 while their home was being repaired. In light of this evidence, the award of a new trial on the issue of damages in the event the judgment NOV did not stand was not an abuse of discretion.

The issue of whether to limit the new trial to the issue of damages is likewise "directed to the sound discretion of the trial judge." *Lazenby v. Godwin*, 40 N.C. App. 487, 496, 253 S.E. 2d 489, 494 (1979). No abuse of discretion has been shown in so limiting the new trial conditionally granted here.

For the foregoing reasons, the judgment NOV is reversed, and the cause is remanded to the trial court for a new trial on the issue of damages only.

Reversed and remanded.

Judges CLARK and ARNOLD concur.