THOMAS E. OATES AND WIFE ANITA R. OATES v. JAG, INC.

No. 8210SC1338

(Filed 7 February 1984)

**Negligence § 2; Sales § 6.4— negligent construction of house—defects obvious to third purchasers—Rule 12(b)(6) motion properly granted**

    In an action in which plaintiffs were third purchasers of a house which they allege was negligently constructed by the defendant, the trial court properly granted the defendant's Rule 12(b)(6) motion since the traditional implied warranty that the dwelling is free from major structural defects and meets a standard of workmanlike quality is available only to the initial vendee-grantee against the vendor-builder. The specific defects alleged in the complaint were *obvious* or discoverable upon a reasonable inspection by the plaintiffs, and the plaintiffs acted at their own risk and were subject to the traditional doctrine ·of *caveat emptor.*

    Judge EAGLES concurs in result.

APPEAL by plaintiffs from *Smith, Judge.* Order entered 27 August 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 29 November 1983.

*Brown & Johnson by C. K. Brown, Jr., for plaintiff appellants.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog by Sanford W. Thompson, IV; and John W. Liles, Jr., for defendant appellee.*

BRASWELL, Judge.

The plaintiffs are the *third* purchasers of a house which they allege was negligently constructed by the defendant. In its answer the defendant asserts that because there has never been a relationship between them, contractual or otherwise, the plaintiffs have failed to state a claim upon which relief can be granted. The trial court granted the defendant's Rule 12(b)(6) motion. The plaintiffs appeal.

The real property in question was originally owned by the defendant who built a dwelling house on the lot in 1978. The defendant sold the house and property to Mr. and Mrs. Edwin Earp Capps who later sold the property to Joos-Poole Realtors and Bob Veasey & Co., Inc.

In February of 1981 the plaintiffs purchased this house and lot where they currently reside, from Joos-Poole Realtors and Bob Veasey & Co., Inc. On 30 April 1982 the plaintiffs filed this action against JAG, Inc., only.

The claim for $25,000 in damages is based upon a theory of negligence in the original construction of the house. In its crucial parts the complaint alleges "[t]hat after the plaintiffs acquired ownership . . . and moved into the residence, they discovered numerous defects, faulty workmanship, and negligent construction." Specifically, the actionable negligence is described as "faulty, defective, and unworkmanlike construction in the building of the home and [that the defendant] was negligent in the construction of the home" by:

(a) installing a cut toilet drain pipe in the upstairs bathroom,

(b) using non grade marked lumber which caused the floor joists on the second floor to sag, settle, and become unlevel,

(c) using an undersized stud underneath a second floor beam in a weight bearing position,

(d) improperly installing a steel flinch plate under the second floor,

(e) creating an excessive span of the floor joists,

(f) using insufficient nails on the ledgers on beams,

(g) improperly nailing the bridging between joists and beams,

(h) using shims between floor joists and second floor flooring in an attempt to raise and level the second floor and to disguise other negligence,

(i) using insufficient vents in the foundation walls,

(j) building the dwelling so that "[a] portion of the hardwood flooring was rotted," and

(k) failing in general "to conform to the customary and acceptable standards and practices" in the trade.

The defendant, on the other hand, asserts that it has no contractual relationship with nor any special duty to the plaintiffs and has no knowledge of what has happened within or without the home since it was sold to the Capps in 1978. The defendant also puts forth that the house passed all building inspections and complied with all applicable building codes when constructed.

The only issue presented for review is whether the trial court properly allowed the motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6). This motion tests whether the pleading is legally sufficient.

> A complaint may be dismissed on motion filed under Rule 12(b)(6) if it is clearly without merit; such lack of merit may consist of an absence of law to support a claim of the sort made, absence of fact sufficient to make a good claim, or the disclosure of some fact which will necessarily defeat the claim.

*Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E. 2d 240, 241 (1981). Restated, a motion to dismiss for failure to state a claim is properly granted when it appears that the law does not recognize the plaintiffs' cause of action or provide a remedy for the wrong alleged. *Id.*

The fundamental question presented asks whether a subsequent purchaser of a dwelling house, once removed from the original vendee, may maintain an action against the original builder for negligent construction of the house. We answer no. There are no allegations of fraud. Also, on these same facts no cause of action can be maintained on the basis of a breach of warranty. The traditional implied warranty that the dwelling is free from major structural defects and meets a standard of workmanlike quality is available only to the initial vendee-grantee against the vendor-builder. *Hartley v. Ballou*, 286 N.C. 51, 209 S.E. 2d 776 (1974); *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E. 2d 557 (1976); *but compare Strong v. Johnson*, 53 N.C. App. 54, 280 S.E. 2d 37 (1981).

The only claim for damages appears to be for a breached warranty of fitness. North Carolina has not yet extended its protection to cover a remote purchaser. North Carolina statutes have not yet extended the concepts in products liability law to con-

struction of houses or buildings. North Carolina has not yet applied strict liability for torts to the works of building contractors. The liability for tort of JAG, Inc., this defendant, ceased upon its sale and transfer of possession by deed to Mr. and Mrs. Edwin Earp Capps. There was no misleading by defendant of plaintiff Oates to make the purchase. The quality of what the Oateses purchased by deed was at the risk of themselves, as buyers. There are no allegations that the builder knew of any latent defects or failed to disclose the existence of defects. Even so, the builder's disclosure would have been to the first vendee Capps—not the remote vendee Oates. No duty has been alleged for which the breach thereof would give rise to an action in tort for negligence. While some jurisdictions apparently have extended tort liability to real property under the theory of vulnerability espoused by Cardozo in *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), North Carolina has not joined the crowd. *See* Brown, Building Contractor's Liability After Completion and Acceptance, 16 Clev.-Mar. L. Rev. 193 (1967).

A case appearing to allow the present plaintiffs a negligent cause of action against the builder is *Sullivan v. Smith*, 56 N.C. App. 525, 289 S.E. 2d 870, *disc. rev. denied*, 306 N.C. 392, 294 S.E. 2d 220 (1982). The defendant-general contractor was sued by the plaintiffs who had purchased the house from the original vendees. The negligent original construction of a fireplace and chimney resulted in a fire which damaged the house. The *Sullivan* court, seeking to reach an equitable result, did not discuss Rule 12(b)(6) or the plaintiffs' standing to sue, but limited its major discussion to whether the trial court erred in granting the builder's motion for judgment n.o.v., which was the assignment of error before that court. *Sullivan* highlights how a builder's liability was extended when the defect was hidden, and when even upon a reasonable inspection by the buyer the hazard remained unknown. A hidden defect provides a basis for avoiding the general *caveat emptor* rule. In *Sullivan*, since no fire had previously broken out from the negligent construction, the original vendees were as unaware as the plaintiffs of the hazardous condition. Although the defect was already present no injury or damage had occurred as of the time the plaintiffs moved in.

In the present case, the plaintiffs acted at their own risk and are subject to the traditional doctrine of *caveat emptor. Buckman*

*v. Bragaw*, 192 N.C. 152, 134 S.E. 422 (1926). This maxim of *caveat emptor*, let the buyer beware, as defined in Black's Law Dictionary 281 (4th ed. 1951), "summarizes the rule that a purchaser must examine, judge, and test for himself . . .; the purchaser takes risk of quality and condition unless he protects himself by a warranty or there has been a false representation." The complaint reveals that the defects as well as the damage had occurred as of the time these plaintiffs moved in. The specific defects were obvious or discoverable upon a reasonable inspection by the plaintiffs, such as the sagging, unlevel second story floor and the rotting hardwood floors. Again, even within the area of products liability North Carolina does not impose liability when the defect and danger are obvious, and this assumption of risk will bar any recovery. *See* G.S. 99B-4(2). Also, in *Hartley v. Ballou, supra*, at 65, 209 S.E. 2d at 785, the Supreme Court relaxed the doctrine of *caveat emptor* in cases concerning the implied warranty of workmanlike quality only with respect to defects of new dwellings when the first purchaser was unaware of them and could not discover the defects by reasonable inspection.

We subscribe to those views expressed in *Levy v. Young Construction Co., Inc.*, 46 N.J. Super. 293, 134 A. 2d 717 (1957), *affirmed*, 26 N.J. 330, 139 A. 2d 738 (1958):

> Anything defendant did occurred while it was the owner of the premises, and not after plaintiffs took title. *Id.* at 296, 134 A. 2d at 718.

> Although the doctrine of *caveat emptor*, so far as personal property is concerned, is very nearly abolished, it still remains as a viable doctrine in full force in the law of real estate. Absent any covenant binding defendant to sell a well constructed house, plaintiffs cannot sue on an implied warranty. [Williston, Contracts, § 926 (Rev. ed. 1936).] *Id.* at 296, 134 A. 2d at 719.

> [T]he policy reasons underlying the rule that the acceptance of a deed without covenants as to construction is the cut-off point so far as the vendor's liability is concerned, are rather obvious. Were plaintiffs successful under the facts presented to us, an element of uncertainty would pervade the entire real estate field. Real estate transactions would become chaotic if vendors were subjected to liability after they had

parted with ownership and control of the premises. They could never be certain as to the limits or termination of their liability. The rule which we impose in the circumstances of the present action works no harshness on purchasers of real estate. Plaintiffs had an opportunity to protect themselves by extracting warranties or guaranties from defendant in the contract of sale and by reserving them in the deed. This is not an uncommon practice, and when pursued allows both vendor and purchaser to know the nature and extent of their rights and liabilities and to order their affairs accordingly. *Id.* at 297-98, 134 A. 2d at 719-20.

We, therefore, hold that the trial court correctly dismissed this action by granting the defendant's Rule 12(b)(6) motion.

Affirmed.

Judge HEDRICK concurs.

Judge EAGLES concurs in result.