SAM GAITO AND WIFE, ELEANOR H. GAITO v. HOWARD FRANK AUMAN, JR. v. ALVIN LeGRAND, INDIVIDUALLY AND D/B/A ALVIN LeGRAND PLUMBING AND HEATING

No. 8320DC500

(Filed 21 August 1984)

**Sales § 6.4— house builder-vendor—warranty of habitability—10-year statute of limitations**

    The implied warranty of habitability extends to all sales of residential housing by a builder-vendor to the initial vendee within the maximum statute of limitations period of 10 years, and it does not matter that renters may have lived in the house during those years. G.S. 1-52(16).

    Judge HEDRICK dissenting.

APPEAL by defendant from *Burris, Judge.* Judgment entered 9 November 1982 in District Court, MOORE County. Heard in the Court of Appeals 15 March 1984.

Plaintiffs, Sam Gaito and his wife, Eleanor H. Gaito, filed this action on 19 May 1981 to recover the costs of repairing a defective air conditioning system in the house they had purchased from the defendant homebuilder, Howard Frank Auman, Jr. Plaintiffs were the home's initial vendees and sought recovery from the builder-vendor on the ground of breach of implied warranty of habitability. Defendant filed an answer on 24 July 1981 and filed an amended answer on 20 October 1981, denying liability on the ground that no implied warranty of habitability attached since the house was not newly completed or under construction at the time of the sale; construction of the house was completed in September, 1973 and the defendant sold the home to the plaintiffs in April, 1978. Defendant also filed a third-party complaint against Alvin LeGrand, the subcontractor who installed the air conditioning system when the house was under construction in 1973.

The case was tried before a jury and the jury found that defendant had breached an implied warranty of workmanlike quality regarding the house he sold to plaintiffs, and awarded plain-

tiffs $3,655 in damages. Judgment was entered on the verdict and defendant appeals.

*Brown, Holshouser and Pate, by G. Les Burke, for defendant appellant.*

*Pollock, Fullenwider, Cunningham & Patterson, P.A., by Bruce T. Cunningham, Jr., for plaintiff appellees.*

JOHNSON, Judge.

This appeal presents a question of first impression arising out of the doctrine of implied warranty of habitability in the sale of a new dwelling. That is, whether a residential structure which is approximately four and a half years old at the time of the sale from the builder-vendor to the initial purchaser may be considered to be a "new dwelling" for implied warranty purposes. For the reasons set forth below, we conclude that a residential structure may be considered "new" for warranty purposes within the maximum statute of limitations period, which is presently ten years. G.S. 1-52(16); *Earls v. Link,* 38 N.C. App. 204, 247 S.E. 2d 617 (1978). Accordingly, we affirm the judgment rendered below.

The material facts are not in dispute. The defendant, Howard Frank Auman, Jr. is in the business of building houses. The house in question was built in the fall of 1973 for "speculation," that is, not pursuant to a contract with a purchaser. The house was not conveyed by deed to a purchaser until 1978, when the plaintiffs bought it from the defendant. Although the house was listed for sale during the remainder of 1973, it remained vacant until 1974. From 1974 to 1978 the house was successively rented to Lee Cole, Jack Vernon and Ray Ashley.

Ashley, who rented the house from March, 1976 to 31 July 1977, had problems cooling the house. The central air conditioning system failed to work properly and could not cool the house more than 10 degrees below the outside temperature. In the fall of 1976, Ashley hired Metrah Spencer to replace the compressor and do work on the air ducts. The work done on the air conditioning system did not increase the size or capacity of the compressor.

In January, 1978, the house was listed for sale with Caulk, Calhoun and Bertrand Realty, and was shown to the plaintiffs by

Thomas Caulk. The plaintiffs were aware of the age of the house and were told that it had been rented for two short periods of time. Plaintiffs decided to purchase the house and the closing took place in April, 1978. The plaintiffs began occupying the house in June, 1978.

Plaintiffs, who never had central air conditioning before, experienced problems with the air conditioning system from the outset. When the system was turned on, it cooled the house by only 10 degrees. Although the plaintiffs attempted to contact defendant about the problem, he did not respond. Plaintiffs then had some minor repairs performed on the system. Eventually they learned that the problem was caused by the inadequate size of the compressor.

At trial, plaintiffs presented the uncontradicted testimony of an expert in the area of heating and air conditioning that the accepted standard for cooling in 1973 was a 20 degree differential from the outside temperature and in 1978 was a 15 degree differential. In the expert's opinion, the plaintiffs' house should have been equipped with a four ton capacity unit instead of the three and a half ton capacity unit that defendant had installed.

Taken together, plaintiffs' evidence showed that (1) the defendant vendor is in the business of building houses; (2) plaintiffs are the initial purchasers of the house in question; (3) the central air conditioning system failed to function properly from the outset because the air conditioning unit installed by defendant in 1973 was inadequate in capacity to cool the house to an accepted standard; (4) despite the various repairs undertaken on the system between 1973 and 1978, no change had been made in the size or capacity of the unit at the time plaintiffs purchased the house or at any relevant time thereafter; (5) the defect was not apparent at the time of the sale and plaintiffs did not discover the defect until sometime after they purchased the home; and (6) the air conditioning system failed to cool the house to an accepted standard at the time of plaintiffs' occupancy in 1978.

The core of the defendant vendor's argument is that despite the foregoing factual circumstances, he cannot be held liable for breach of implied warranty of fitness for habitation because several years had intervened between the home's construction and sale, and the house had been lived in by various renters dur-

ing that four and a half year period. Significantly, defendant does not contend that the central air conditioning system is not within the scope of the implied warranty accompanying the sale of residential structures and we have no hesitancy in concluding that it is. Furthermore, defendant does not argue that the air conditioning unit installed in the house prior to its completion was of a proper capacity to adequately cool the house, nor does he contest the fact that the size or capacity of the unit remained unaltered between the time of construction and the date of sale to plaintiffs. Defendant's sole contention is that a house which is four and a half years old at the time of its initial sale from the builder-vendor to a consumer-vendee cannot be considered "new" or "recently completed" for implied warranty purposes. We disagree.

The question posed by this appeal must be considered against the backdrop of the development of the implied warranty. It is now well settled in this jurisdiction that an implied warranty of habitability accompanies the sale of "newly" constructed dwellings. The rule was first stated as follows:

> [I]n every contract for the sale of a recently completed dwelling . . . the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; and . . . this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.

*Hartley v. Ballou,* 286 N.C. 51, 62, 209 S.E. 2d 776, 783 (1974). Subsequent opinions by North Carolina courts have clarified and expanded the scope of the implied warranty's nature and application.

In *Lyon v. Ward,* 28 N.C. App. 446, 450, 221 S.E. 2d 727, 729 (1976), *Hartley* was interpreted by this Court "to stand for the proposition that a builder-vendor impliedly warrants to the initial purchaser that a house and all its fixtures will provide the service

or protection for which it was intended under normal use and conditions." Judge Hedrick noted that, in adopting the implied warranty exception to the rule of *caveat emptor*, North Carolina courts have followed the "developing trend in the United States which recognizes that there ought to be an implied understanding of the parties when an agreed price is paid that the home is reasonably fit for the purpose for which it is to be used." 28 N.C. App. at 450, 221 S.E. 2d at 729. "The caveat emptor rule as applied to new houses is an anachronism patently out of harmony with modern home buying practices. It does a disservice not only to the ordinary prudent purchaser, but to the industry itself by lending encouragement to the unscrupulous, fly-by-night operator and purveyor of shoddy work." *Id.; quoting Humber v. Morton*, 426 S.W. 2d 554, 562 (Tex. 1968). In *Lyon*, the builder-vendor was held to have impliedly warranted to the initial purchasers that a well constructed by him on the premises and sold as an integral part of the house would provide an adequate, usable water supply for the house.

In *Hinson v. Jefferson*, 287 N.C. 422, 435, 215 S.E. 2d 102 (1975), the Supreme Court extended this "well-reasoned exception" to cover the ability of land conveyed subject to restrictive covenants to be used in accordance with the limited uses specified in the covenants. *See also Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 225 S.E. 2d 557 (1976) (implied warranty breached by poor waterproofing causing standing water in crawlspace); *George v. Veach*, 67 N.C. App. 674, 313 S.E. 2d 920 (1984) (septic tank system comes within coverage of implied warranty); *Earls v. Link, Inc.*, 38 N.C. App. 204, 247 S.E. 2d 617 (1978) (builder-vendor warrants that a fireplace and attached chimney will adequately remove smoke). *See generally*, Annot., 25 A.L.R. 3d 383 (1969).

The foregoing decisions have all concerned implied warranties arising upon the sale of undisputed new or recently completed dwellings to an initial purchaser. Although no recovery has yet been granted to a plaintiff who was not the initial purchaser on the basis of breach of implied warranty, this Court has extended implied warranty protection to one who inherits a new home from the original vendee, despite the passage of several years between construction and inheritance. *Strong v. Johnson*, 53 N.C. App. 54, 57, 280 S.E. 2d 37, 40 (1981).

In *Strong*, the defendant had conveyed a lot to the plaintiff's sister and constructed a dwelling on it in 1974. In 1977, plaintiff inherited the property when his sister died. The home was then damaged in 1978 when a fire, allegedly caused by faulty construction of the fireplace, broke out. After reviewing the relevant decisions and policies for allowing recovery, this Court could find "no reason" to bar recovery by the original purchaser's devise. The fact that the home was no longer "brand new" or "recently constructed" at the time it passed to the plaintiff by will was evidently of no concern to the court. *See also Sullivan v. Smith*, 56 N.C. App. 525, 289 S.E. 2d 870; *disc. rev. denied*, 306 N.C. 392, 294 S.E. 2d 220 (1982) (purchaser of a dwelling from the original vendees may maintain an action for negligent construction against the general contractor for latent defect in fireplace and chimney). *But see Oates v. Jag, Inc.*, 66 N.C. App. 244, 311 S.E. 2d 369 (1984) (third purchasers of a dwelling house barred from recovery for negligent construction from the original builder on the basis of judicial reluctance to further limit traditional doctrine of *caveat emptor*).

We note in passing that courts in a number of jurisdictions which have considered the matter have generally allowed a subsequent or remote purchaser to recover where actual negligence on the part of a builder-vendor which results in foreseeable injury or loss is proven. Annot., 10 A.L.R. 4th 385, 388 (1981). Some courts have also extended an implied warranty of merchantability or habitability from a builder to remote purchasers. *See, e.g., Terlinde v. Neely*, 275 S.C. 395, 271 S.E. 2d 768 (1980); *Moxley v. Laramie Builders, Inc.*, 600 P. 2d 733 (Wyo. 1979). The extension is generally limited to latent defects, not discoverable by a subsequent purchaser's reasonable inspection, manifesting themselves after the purchase. Furthermore, the age of the house has not figured prominently in any discussion of whether the warranty should attach, but is properly considered as a factor in determining whether a breach has occurred. *See, e.g., George v. Veach, supra; Terlinde v. Neely, supra; Moxley v. Laramie Builders, Inc., supra.*

The foregoing review discloses a trend in this and other jurisdictions toward adoption of a more inclusive implied warranty theory. The question presented by this appeal—the length of time that a dwelling may be considered "new" or "recently com-

Gaito v. Auman

pleted" for warranty purposes—must be considered in light of the policy concerns which led to the creation of this exception to the rule of *caveat emptor*.

> [T]he trend of judicial opinion is to invoke the doctrine of implied warranty of fitness in cases involving sales of new houses by the builder. The old rule of *caveat emptor* does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses is manifestly a denial of justice.

*Humber v. Morton, supra,* 426 S.W. 2d at 561.

Clearly, the purpose of a warranty is to protect the innocent purchasers and to hold the builders accountable for the quality of their work. The relevant economic policy considerations in this area were aptly summarized by Judge Whichard in *George v. Veach, supra.*

> [B]y virtue of superior knowledge, skill, and experience in the construction of houses, a builder-vendor is generally better positioned than the purchaser to know whether a house is suitable for habitation. He also is better positioned to evaluate and guard against the financial risk posed by a defective septic system, and to absorb and spread across the market of home purchasers the loss therefrom. In terms of risk distribution analysis, he is the preferred or "least cost" risk bearer. Finally, he is in a superior position to develop or utilize technology to prevent such defects; and as one commentator has noted, "the major pockets of strict liability in the law" derive from "cases where the potential victims . . . are not in a good position to make adjustments that might in the long run reduce or eliminate the risk." R. Posner, Economic Analysis of Law 140-41 (2d ed. 1977).

67 N.C. App. at 680, 313 S.E. 2d at 923-924. In view of these policy considerations, any reasoning which would arbitrarily bar the initial vendees' right to maintain an action for a latent defect on the basis of the age of the house at the time of sale is untenable.

With the object of habitable housing in mind, latent defects that render a house unlivable or render its fixtures unusable or virtually nonfunctional should not be overlooked merely because the house is four, five or even eight years old at the time of sale. Moreover, it is the nature of a "latent" defect that it will not usually manifest itself until some time has elapsed.

Although nearly every reported decision in this area of the law, with the exception of *Lyon v. Ward, supra,* has at least referred to the fact that the building was either under construction or undisputedly recently constructed when sold, no case that our research has disclosed has directly addressed the question of what constitutes a "new" or "recently completed" house for warranty purposes. Inasmuch as the relevant authorities and policy considerations all point toward an expansion in warranty protection, in the interests of fairness and judicial economy, the question of "newness" at the time of the sale demands a rule of general applicability.

This very question was addressed in Note, The Implied Warranty of Habitability in North Carolina Revisited, 58 N.C.L. Rev. 1055 (1980), in the context of a discussion on extending warranty protection to subsequent purchasers. However, the reasoning is equally applicable to the situation under discussion. The Note's author proposed that a home should be considered "new" for warranty purposes throughout the duration of the maximum statute of limitations period, which, pursuant to the decision in *Earls v. Link, Inc., supra,* is presently set at ten years under G.S. 1-52(16) (cause of action in tort or contract shall not accrue until date latent injury or damage is discovered or should reasonably have been discovered; provided that no action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action). 58 N.C.L. Rev. at 1067.

We find the reasoning behind this proposal persuasive. As the author points out, the builder-vendor remains adequately protected from "endless liability" by the bar of the statute of limitations, by the requirement of the finding of a latent defect, and by considerations of such factors as the age and prior use of the home in determining whether a breach of implied warranty has occurred in the particular case. 58 N.C.L. Rev. at 1068. Accordingly, we hold that the implied warranty of habitability extends to

all sales of residential housing by a builder-vendor to the initial vendee[1] within the maximum statute of limitations period of 10 years.

Here, the initial vendees purchased their home from the builder-vendor in 1978. Their evidence showed that the defect existed at the time of the home's construction in 1973 and was present at the time of sale in 1978. Further, it showed that the defect in the central air conditioning system was not apparent at the time of purchase and did not manifest itself to plaintiffs until some months after the purchase, in the summer of 1978. Plaintiffs notified defendant of the problem and received no response. After several unsuccessful minor repairs were undertaken, they learned that the defect was in the size of the air conditioning unit itself and that the cost of correcting the problem would be $3,655. Plaintiffs filed this action on 19 May 1981, within three years of the accrual of their cause of action under G.S. 1-52(16), and well within the 10 year maximum statute of limitation period. The house they purchased may therefore be considered "new" for warranty purposes, and judgment was properly entered by the trial court on the jury verdict in plaintiff's favor.

We have carefully examined defendant's other assignment of error and find it to be without merit.

Affirmed.

Judge HILL concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

In my opinion the builder-vendor's implied warranty of habitability, *Hartley v. Ballou,* 286 N.C. 51, 209 S.E. 2d 776 (1974); *Lyon v. Ward,* 28 N.C. App. 446, 221 S.E. 2d 727 (1976), does not apply to an air-conditioning unit that was installed in a house at the time of construction of the house four-and-one-half years

---

1. Although we need not address the question as to whether an implied warranty should be extended to subsequent purchasers of the property, we note that the logic of this holding would apply to such situations.

before that house was sold to the plaintiffs. *Lyon*, cited by plaintiffs and relied on by the majority in its decision, is clearly factually distinguishable. Moreover, I am particularly disturbed by the footnote in the majority decision suggesting that an implied warranty of habitability might extend as well to subsequent purchasers. I vote to reverse the order denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

The majority has not discussed, and apparently has not considered, defendant's assignment of error relating to damages. If the trial court did not err in denying defendant's motions for a directed verdict and judgment notwithstanding the verdict, in my opinion, the defendant is entitled to a new trial because the record discloses a manifest miscarriage of justice with respect to the issue of damages. Under the circumstances of this case it is clear to me that the cost of replacing a three-and-one-half ton air conditioning unit, which is in no way defective and is no more than four-and-one-half years old, with a new four ton unit is not the correct measure of damages.