Health Mgmt. Assocs., Inc. v. Yerby, 2009 NCBC 14.

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| FRANKLIN COUNTY | 06 CVS 0839 |

| | |
|---|---|
| HEALTH MANAGEMENT ASSOCIATES, INC., AND LOUISBURG H.M.A., INC., d/b/a FRANKLIN REGIONAL MEDICAL CENTER,<br>            Plaintiffs<br><br>        v.<br><br>LEMUEL G. YERBY, III, M.D., TRIANGLE SURGICAL ASSOCIATES, P.A., MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA a/k/a MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA, INC., MEDICAL MUTUAL SERVICES, LLC, AND STEVEN SCHWAM, M.D.,<br>            Defendants. | **OPINION AND ORDER<br>GRANTING SUMMARY JUDGMENT** |

This matter came before the court on a Motion for Summary Judgment (the "Motion") filed by Defendants Lemuel G. Yerby, III, M.D. and Triangle Surgical Associates, P.A. Among other things, the Motion presents the issue of whether, nothing else appearing, a corporate parent that settles all personal injury claims brought against it, its subsidiary entity and unrelated alleged joint tortfeasors has standing to seek recovery of contribution or indemnity from the unrelated but released joint tortfeasors. Under the facts of this particular matter, the court concludes that such remedies are not available to the corporate parent, and that the Motion should be granted.

*Mitchell Brewer Richardson, by Ronnie M. Mitchell, Esq. and Coy E. Brewer, Esq. for Plaintiffs.*

*Young Moore and Henderson, P.A., by William P. Daniell, Esq. and Kelly E. Street, Esq.; and Walker, Clark, Allen, Grice & Ammons, LLP, by Robert D. Walker, Jr., Esq. for Defendants.*

Jolly, Judge.

[1]     This is a civil action seeking recovery for contribution, indemnification and unjust enrichment.  It arises out of settlement by one or more of the Plaintiffs of all remaining personal injury claims in the case of *Joan M. Faulkner and John Faulkner v. Health Management Associates, Inc.; Louisburg H.M.A., Inc. d/b/a Franklin Regional Medical Center; Steven Schwam, M.D.; Lemuel Yerby M.D. and Triangle Surgical Associates, P.A.,* Franklin County File No. 03 CVS 271 (the "Faulkner Lawsuit").

[2]     This matter was designated as a complex business case pursuant to Rules 2.1 and 2.2 of the General Rules of Practice for the Superior and District Courts, and assigned to the undersigned, Special Superior Court Judge for Complex Business Cases, by Order of The Honorable Sarah Parker, Chief Justice of the Supreme Court of North Carolina on July 24, 2007.

[3]     After considering the briefs, arguments of counsel, pleadings, discovery and all other admissible matters of record, the court reaches the conclusions reflected in this Order.

[4]     The material facts reflected in paragraphs 5 through 41 of this Order exist, are undisputed[1] and are pertinent to the issues raised by the Motion.

---

[1] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)").  However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment.  *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138 (1975).

I.

FACTUAL AND PROCEDURAL BACKGROUND

[5]     This case arises out of the Faulkner Lawsuit, which was filed by Joan Faulkner ("Ms. Faulkner") and her husband ("Dr. Faulkner") (Ms. Faulkner and Dr. Faulkner sometimes are referred to herein collectively as the "Faulkners") on April 7, 2003, in the Superior Court of Franklin County. In that civil action, the Plaintiffs sought recovery for injuries sustained by Ms. Faulkner during an operating room fire that occurred on June 25, 2002, at Franklin Regional Medical Center ("Franklin Regional"), a hospital in Louisburg, North Carolina, that was owned and operated by Louisburg HMA, Inc.

[6]     The Defendants in the Faulkner Lawsuit were (a) Dr. Lemuel G. Yerby, III ("Dr. Yerby"), a surgeon; (b) Triangle Surgical Associates, P.A., Dr. Yerby's employer; (c) Dr. Steven Schwam ("Dr. Schwam"), an anesthesiologist; (d) Health Management Associates, Inc. ("HMA") and (e) Louisburg H.M.A., Inc. ("Louisburg HMA"), a subsidiary of HMA.

[7]     HMA is, and at all relevant times to this action was, a corporation organized and existing under the laws of Delaware with its principal place of business in Naples, Florida.

[8]     HMA is, and at all relevant times to this action was, a "holding company," which acquires hospitals and medical practices that it then operates as separate and distinct corporate entities. The hospitals and medical practices are incorporated in the states in which they are located.

[9]     In 1986, HMA became the sole shareholder of Louisburg HMA, a North Carolina corporation that owns and operates Franklin Regional.

[10]     Louisburg HMA is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of North Carolina and doing business as Franklin Regional Medical Center in Louisburg, North Carolina.

[11]     Louisburg HMA is, and at all times relevant to this action was, a corporation with its own Articles of Incorporation and Bylaws.

[12]     At all times relevant to this action, Louisburg HMA owned the land and buildings where Franklin Regional is located.

[13]     At all times relevant to this action, the individuals at Franklin Regional who provided healthcare to patients were either employees of Louisburg HMA or were independent contractors who had privileges to treat patients at Franklin Regional.

[14]     At all times relevant to this action, HMA did not provide any direct patient care at Franklin Regional.

[15]     On June 25, 2002, Ms. Faulkner underwent a left cervical lymph node biopsy at Franklin Regional for the purpose of determining whether she was suffering from cancer.

[16]     On June 25, 2002, the surgeon who performed Ms. Faulkner's procedure was Dr. Yerby.  Anesthesia during that procedure was provided by Dr. Schwam and Kevin Henson, a certified registered nurse anesthetist (CRNA) who was employed by Louisburg HMA.

[17]     Dr. Yerby and Dr. Schwam were independent contractors who, at all times relevant to this action and the Faulkner Lawsuit, were not employed by either Louisburg HMA or HMA.

[18]     During the June 25, 2002 surgery, a fire occurred and Ms. Faulkner was burned on the face, neck and chest.

[19]     On April 7, 2003, the Faulkners initiated the Faulkner Lawsuit by filing a Complaint alleging, among other things, negligence on the parts of HMA, Louisburg HMA, Dr. Yerby, Triangle Surgical Associates, P.A. and Dr. Schwam.

[20]     The Complaint in the Faulkner Lawsuit, as amended, included claims against HMA that were separate and distinct from the negligence claims being asserted against Dr. Yerby, Triangle Surgical Associates, P.A. and Dr. Schwam.  The claims against HMA included a claim arising from the termination of Dr. Faulkners' employment with the Perry Medders Clinic and a claim for punitive damages.

[21]     On September 20, 2004, Dr. Schwam entered into a settlement with the Faulkners and was released from the Faulkner Lawsuit.

[22]     The Faulkner Lawsuit then proceeded with respect to the remaining claims.  It was set for trial on August 29, 2005.

[23]     Five days before trial, on or about August 24, 2005, HMA and its professional liability insurance carrier, The Doctors' Company, entered into a settlement with the Faulkners of all remaining claims in the Faulkner Lawsuit.  Pursuant to the Settlement Agreement and Release ("Settlement Agreement"), The Doctors' Company paid to the Faulkners its liability policy limits and HMA paid an additional amount to the Faulkners.

[24]   The terms of the Settlement Agreement provided that not only were HMA and Louisburg HMA released from any liability to the Faulkners arising from the June 25, 2002 surgery, but also that Defendants Dr. Yerby and Triangle Surgical Associates, Inc. were released from any liability to the Faulkners arising from the surgery.

[25]   Defendants Dr. Yerby and Triangle Surgical Associates, Inc. never authorized HMA to act on their behalf with respect to settlement of the Faulkner Lawsuit; and, in fact, they refused to participate in the settlement negotiated by HMA.

[26]   Defendants Dr. Yerby and Triangle Surgical Associates, P.A. did not execute the Settlement Agreement.

[27]   The Settlement Agreement specifically provided for the release of:

> all claims "including, but not limited to, any and all damages alleged and claimed to have been sustained by Releasors, as well as any and all claims for negligence, negligent infliction of emotional distress, loss of consortium, or employment issues alleged or claimed to have been sustained as a result of any and all care, treatment, contract of employment, or any other form of contract between Releasors and any employee, agent or insured of said Releasees, their agents and employees, arising from Joan Faulkner's medical treatment at Franklin Regional Medical Center on June 25, 2002 or Dr. John Faulkner's employment with The Perry Medders Medical Clinic.

[28]   The Settlement Agreement did not provide for any allocation of the total settlement amount between the personal injury claim of Ms. Faulkner, a consortium claim by Dr. Faulkner, Dr. Faulkner's contended employment claim or the contended punitive damages claim against HMA.

[29]   On August 24, 2005, The Doctors' Company issued a settlement check for its portion of the settlement payment to Patterson Harkavy and Lawrence, as attorneys for the Faulkners.

[30]     On September 13, 2005, pursuant to the Settlement Agreement, HMA transferred the balance of the settlement payment by wire transfer from a bank account at Wachovia Corporation in the name of "Hospital Management Associates, Inc." to Patterson Harkavy and Lawrence, as attorneys for the Faulkners.

[31]     Louisburg HMA did not make any settlement payment to the Faulkners.

[32]     On June 5, 2006, the Faulkners dismissed the Faulkner Lawsuit, with prejudice as to the remaining Defendants.

[33]     On or about August 24, 2006, Plaintiffs HMA and Louisburg HMA brought this civil action, in which they seek "compensatory damages" from various Defendants in connection with the payment made by and in behalf of HMA to settle the Faulkner Lawsuit.  Plaintiffs voluntarily have dismissed all Defendants other than Dr. Yerby and Triangle Surgical Associates, P.A.

[34]     With regard to the moving Defendants, the Plaintiffs' claims ("Claim(s)") allege that: (a) Plaintiff Louisburg HMA is entitled to contribution, (b) Plaintiff HMA is entitled to contribution, (c) the moving Defendants have been unjustly enriched by Plaintiffs and (d) Plaintiff HMA is entitled to indemnity.

[35]     At times material to this civil action, HMA operated an insurance program pursuant to which it collected payments from its subsidiaries, pooled those funds, and then used them to pay indemnification claims against the subsidiaries if such payments became necessary.  However, at such times, HMA had not been licensed as an insurance company in North Carolina.

[36]     The Defendants filed their Motion on January 23, 2009, and it came on for hearing before this court on February 25, 2009.

[37]    At the time the Motion was called for hearing, Plaintiff HMA did not have a Certificate of Authority required by North Carolina for foreign corporations transacting business in this State to maintain an action herein.

[38]    The Complaint in this civil action did not include an allegation that the corporate veil should be pierced or otherwise that the acts of HMA should be treated as acts of its subsidiary, Louisburg HMA.

[39]    In their Answer in the Faulkner Lawsuit, HMA and Louisburg HMA denied that HMA exercised control over Louisburg HMA or that it operated Louisburg HMA as a mere instrumentality of HMA.[2]

[40]    Further, in the course of the Faulkner Lawsuit, HMA filed a formal response to Plaintiffs' discovery that was entitled "Defendants (sic) Health Management Associates, Inc.'s Supplemental Responses to Plaintiffs' First Set of Interrogatories and Request for Production of Documents and Motion for Protective Order."  In that factual response, HMA and Louisburg HMA affirmatively averred that (a) Louisburg HMA was not a mere instrumentality of HMA; (b) that HMA did not completely dominate Louisburg HMA's finances or its policies or business practices and (c) that Louisburg HMA (i) had its own separate mind, will and existence; (ii) was adequately capitalized; (iii) had complied with corporate formalities; (iv) had its own independent corporate identity and (v) had its own articles of incorporation and bylaws.

[41]    Notwithstanding Plaintiffs' pleadings and discovery responses to the contrary in the Faulkner Lawsuit, in Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Plaintiffs' "Memorandum") in the instant action, filed on February 18, 2009, HMA and Louisburg HMA take the position that the

---

[2] Answer Defs. Health Mgmt. Assocs. and Louisburg HMA, ¶ 4.

corporate veil between them should be disregarded and considered pierced. Plaintiffs say that (a) Louisburg HMA had limited capital; (b) its funds were swept to the controlling parent HMA, and the parent supplied the thinly capitalized Louisburg HMA with payroll and other funds as necessary for the subsidiary to function; (c) Louisburg HMA did not observe corporate formalities; (d) HMA completely dominated Louisburg HMA and (e) that Louisburg HMA was a mere instrumentality of HMA.

## II.

## DISCUSSION

[42]    Defendants contend that they are entitled to summary judgment in their favor because the undisputed evidence establishes that:

(a)    Plaintiff Louisburg HMA paid no portion of the settlement in the Faulkner Lawsuit, and therefore has no standing in this action to seek recovery from Defendants Yerby or Triangle Surgical Associates, Inc., whether for contribution, indemnification or unjust enrichment.

(b)    HMA was not a tortfeasor in the Faulkner Lawsuit; and therefore it has no legal basis as a tortfeasor for pursuing a claim against Defendants Yerby or Triangle Surgical Associates, Inc. for contribution, indemnification or unjust enrichment in this action.

(c)    HMA, which directly or through its insurance carrier, paid the settlement in the underlying Faulkner Lawsuit did so while at all times material it was acting in North Carolina as an unlicensed insurance company, and therefore it is barred from pursuing this action.

(d)     HMA and Louisburg HMA were maintained as separate corporate entities, they were not the alter ego of each other and the corporate veil between them prevents HMA from standing in the shoes of Louisburg HMA for purposes of this civil action.

(e)     In the alternative, should there be any evidence of record in this civil action to the effect that the corporate veil between HMA and Louisburg HMA was susceptible to piercing, HMA and Louisburg HMA should be judicially estopped from arguing such contentions because (i) they took a clearly and materially contrary factual and legal position in the Faulkner Lawsuit; (ii) they have derived, enjoyed and relied upon the benefits of the corporate structure that they created and observed and (iii) they now should be estopped from attempting to avoid the detriments of that corporate structure.

(f)     Defendants did not request, encourage or otherwise entice Plaintiffs to settle the Faulkner Lawsuit, and therefore HMA is not entitled to pursue a claim for unjust enrichment.

(g)     The making of a lump sum settlement payment to the Faulkners, without there being any allocation made between the various disparate Faulkner Lawsuit claims, some of which do not involve the moving Defendants, presents a fatal flaw to the HMA contribution or indemnity claims.

[43]     Plaintiffs oppose the Motion, contending that the forecast of evidence is sufficient to support an inference that:

(a)     The corporate veil between HMA and Louisburg HMA should be deemed pierced, so that the actions of each are attributable to the other.

Consequently, the settlement payment made by HMA should be treated no differently than if it had been made by Louisburg HMA.

(b)     HMA was passively negligent and Defendant Yerby was actively negligent, and therefore HMA is entitled to indemnification from Defendant Yerby.

(c)     Defendants benefitted from the settlement by HMA of the Faulkner Lawsuit, and were therefore unjustly enriched.

[44]    The court is forced to agree with Defendants.

[45]    Louisburg HMA made no settlement payments to the Faulkners, and it has no independent standing in this action to pursue claims against either Defendant.  G.S. 1B-1(a) and (b).

[46]    There is no admissible evidence before the court supporting an inference that HMA was independently negligent in causing any injuries to the Faulkners.  Indeed, Plaintiffs here do not contend that HMA independently was a joint tortfeasor in causing the Faulkners' injuries.  Consequently, HMA does not have independent standing as a tortfeasor to bring a contribution claim against the moving Defendants under North Carolina's Uniform Contribution Among Tort-Feasors Act, N.C. Gen. Stat. Chapter 1B (the "Act") (respective Sections of the North Carolina General Statutes are cited herein as "G.S.").  G.S. 1B-1(a) and (b).  *Nationwide Mut. Ins. Co. v. Weeks-Allen Motor Co.*, 18 N.C. App. 689 (1973).

[47]    There is insufficient admissible evidence forecast in this civil action to give rise to an inference that (i) HMA failed to maintain a separate corporate identity between it and Louisburg HMA that would expose HMA to liability for negligent acts of Louisburg

HMA; or that (ii) Louisburg HMA otherwise was acting as the alter ego or as the "mere instrumentality" of HMA. One of these circumstances was necessary for HMA to have exposure to liability to third parties for negligent acts of Louisburg HMA, or otherwise for Louisburg HMA to be deemed at law the alter ego of HMA. The *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8 (1966); *Whitehurst v. FCX Fruit and Vegetable Service*, 224 N.C. 628 (1944).

[48]    Even if there was evidence of record that would support an inference that the corporate veil between HMA and Louisburg HMA could be pierced, under the facts of this action, the Plaintiffs are estopped from making such an argument by virtue of their knowingly having taken diametrically opposed positions on the corporate veil issues in the Faulkner Lawsuit and in the instant action.[3]

[49]    Therefore, whether under theories of alter ego or piercing of the corporate veil, neither HMA nor Louisburg HMA is able to stand in the shoes of the other in attempting to recover on the Claims asserted in this action against the moving Defendants.

[50]    HMA does not have standing to recover contribution from the moving Defendants on the theory that it is in the position of a subrogated insurance carrier for Louisburg HMA, because at times material HMA was operating without the necessary

---

[3] The North Carolina courts have recognized that the circumstances under which the equitable doctrine of judicial estoppel may be imposed are not reducible to a particular formulation of principles. *Price v. Price*, 169 N.C. App. 187, 190 (2005) (in the context of judicial estoppel). The application of estoppel may vary based on the facts of each case. *Miller v. Talton*, 112 N.C. App. 484, 488 (1993). Further, neither intent to deceive, bad faith nor fraud are necessary before estoppel may apply. *Hamilton v. Hamilton*, 296 N.C. 574, 576 (1978). Rather, the wrong lies in the inconsistent position on material factual issue subsequently taken by the party being estopped, rather than in the original conduct. *Id.* Consequently, as a matter of equity, the Plaintiffs are bound by their affirmative assertions in the Faulkner Lawsuit to the effect that there was a separate corporate identity between HMA and Louisburg HMA that could not be pierced.

licensure in North Carolina.[4]

[51]    There is insufficient admissible evidence forecast in this civil action to give rise to an inference that HMA was exposed to or suffered any derivative liability as a proximate result of contended negligence on the part of either moving Defendant. Therefore, as a matter of law HMA is not entitled to pursue an indemnity claim, either at law or equity, against the moving Defendants.[5]

[52]    There is insufficient admissible evidence forecast in this civil action to give rise to an inference that either Defendant was unjustly enriched by HMA's settlement of the Faulkner claims.  In *Wright v. Wright*, 305 N.C. 345, 350 (1982), the Supreme Court of North Carolina held that not every voluntary benefit provided to another is unjust enrichment.  Specifically, the recipient of a benefit voluntarily bestowed without solicitation or inducement is not liable for its value.  *Id.*  Here, HMA voluntarily entered into the Settlement Agreement without solicitation or inducement by the moving Defendants, and as a matter of law it is not entitled to pursue an unjust enrichment Claim against them, either at law or equity.

[53]    The undisputed admissible evidence forecast in this civil action establishes that as to the moving Defendants, the settlement payment by HMA to the Faulkners constituted a voluntary act.

[54]    Plaintiff HMA has forecast insufficient evidence to support any of its Claims against either moving Defendant.

---

[4] G.S. 58-28-15 provides that "no company transacting insurance business in this State without a license shall be permitted to maintain an action at law or in equity in any court of this State to enforce any right, claim or demand arising out of the transaction of such business until such company shall have obtained a license."

[5] *See Sullivan v. Smith*, 56 N.C. App. 525, 531 (1982).

[55]    There exist no genuine issues as to any material fact with regard to the Plaintiffs' Claims against the moving Defendants; and pursuant to Rule 56, said Defendants are entitled to summary judgment in their favor as a matter of law.

[56]    In light of the above rulings, no determination is required on the issue of whether the making of a lump sum payment to the Faulkners, without any allocation being made between the various disparate Faulkner Lawsuit claims is fatal to the HMA contribution or indemnity claims.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that Defendants' Motion for Summary Judgment is GRANTED, and this civil action hereby is DISMISSED.

This the 1st day of June, 2009.